Bijan Amini
Avery Samet
Jeffrey Chubak
STORCH AMINI & MUNVES PC
2 Grand Central Tower, 25th Floor
140 East 45th Street
New York, New York 10017
Tel: (212) 490-4100

*Attorneys for Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>KENNETH IRA STARR, *et al.*,<br><br>Debtors. | Chapter 7<br><br>Case No. 11-10219 (MEW)<br><br>Jointly Administered<br><br>Substantively Consolidated |
| ROBERT L. GELTZER, AS CHAPTER 7 TRUSTEE OF KENNETH IRA STARR, STARR & COMPANY, LLC, AND STARR INVESTMENT ADVISORS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ANNALOU LEIBOVITZ a/k/a ANNIE LEIBOVITZ, LEIBOVITZ STUDIO, INC., 305-307 WEST 11th STREET LLC, and 311 WEST 11th STREET LLC,<br><br>Defendants. | Adv. Pro. No. 14-2446 (MEW) |

### <u>NOTICE OF HEARING ON DEFENDANTS' MOTION TO DISMISS</u>

PLEASE TAKE NOTICE a hearing on the attached motion (the "<u>Motion</u>") of defendants

Anna-Lou Leibovitz a/k/a Annie Leibovitz, Leibovitz Studio, Inc., 305-307 West 11th Street LLC,

and 311 West 11th Street LLC to dismiss the complaint, filed December 30, 2014 in the above-

captioned adversary proceeding by plaintiff Robert L. Geltzer, as chapter 7 trustee for Kenneth Ira

Starr, Starr & Company, LLC, and Starr Investment Advisors, LLC, pursuant to Federal Rule of

Civil Procedure 12(b)(6), will be held before the Honorable Michael E. Wiles in Room 617 of the

United States Bankruptcy Court for the Southern District of New York, located at One Bowling

Green, New York, New York 10004, on **June 24, 2015 at 10:00 a.m. (EST)**.

    PLEASE TAKE FURTHER NOTICE any objection to the Motion must be in writing,

comply with the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the

Southern District of New York, filed with the Court, and served on defendants' undersigned

attorneys so as to be received by **June 3, 2015 at 4:00 p.m. (EST)**.

Dated: April 30, 2015
      New York, New York

<div style="margin-left:40%">

/s/ Avery Samet    
Bijan Amini
Avery Samet
Jeffrey Chubak
STORCH AMINI & MUNVES PC
2 Grand Central Tower, 25th Floor
140 East 45th Street
New York, New York 10017
Tel: (212) 490-4100

*Attorneys for Defendants*

</div>

Bijan Amini
Avery Samet
Jeffrey Chubak
STORCH AMINI & MUNVES PC
2 Grand Central Tower, 25th Floor
140 East 45th Street
New York, New York 10017
Tel: (212) 490-4100

*Attorneys for Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>KENNETH IRA STARR, *et al.*,<br><br>    Debtors. | Chapter 7<br><br>Case No. 11-10219 (MEW)<br><br>Jointly Administered<br><br>Substantively Consolidated |
| ROBERT L. GELTZER, AS CHAPTER 7<br>TRUSTEE OF KENNETH IRA STARR, STARR<br>& COMPANY, LLC, AND STARR<br>INVESTMENT ADVISORS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ANNALOU LEIBOVITZ a/k/a ANNIE<br>LEIBOVITZ, LEIBOVITZ STUDIO, INC., 305-<br>307 WEST 11th STREET LLC, and 311 WEST 11th<br>STREET LLC,<br><br>    Defendants. | Adv. Pro. No. 14-2446 (MEW) |

**<u>DEFENDANTS' MOTION TO DISMISS</u>**

# Table of Contents

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT PURSUANT TO RULE 7012(b) ..................................................................... 3

STATEMENT OF FACTS ......................................................................................................... 3

ARGUMENT ................................................................................................................................ 7

I.      LEGAL STANDARD FOR MOTION TO DISMISS ................................................... 7

II.     THE TRUSTEE'S $440,307 PROFESSIONAL SERVICES CLAIMS MUST BE
        DISMISSED AS AGAINST ALL DEFENDANTS ....................................................... 8

        A.      The Account Stated Claim Must be Dismissed ................................................... 8

                1.      The Account Stated Claim Fails to Allege an Underlying Agreement ....... 8

                2.      The Account Stated Claim Fails to Plead any of the Claim's Specific
                        Elements ........................................................................................................... 9

        B.      The Quantum Meruit Claim Must be Dismissed ................................................. 10

        C.      The Turnover Claim Must be Dismissed ............................................................. 11

        D.      At the Very Least, the Professional Services Claims Must be Dismissed as
                Against the Corporate Defendants ....................................................................... 12

III.    THE TRUSTEE'S $594,796 BREACH OF CONTRACT CLAIM MUST BE
        DISMISSED AS AGAINST ALL DEFENDANTS ....................................................... 12

CONCLUSION ............................................................................................................................ 16

i

## Table of Authorities

**Cases**                                                                                    **Page(s)**

*Abraham v. Am. Home Mortg. Serv., Inc.*,
    947 F. Supp. 2d 222 (E.D.N.Y. 2013) ........................................................................ 14

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) .................................................................................... 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 7, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 7, 13

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
    369 F.3d 212 (2d Cir. 2004) ................................................................................ 7, 9

*Cyberlease, LLC v. JPMorgan Chase Bank*,
    No. 04-1221, 2005 WL 2030317 (S.D.N.Y. Aug. 22, 2005) ....................................... 8

*DiMare Homestead, Inc. v. Alphas Co. of N.Y., Inc.*,
    No. 09-6644, 2012 WL 1155133 (S.D.N.Y. April 5, 2012) ......................................... 9

*Gentile v. Conley*,
    636 F. Supp. 2d 246 (S.D.N.Y. 2009) ..................................................................... 13

*Gowan v. Patriot Group, LLC (In re Dreier LLP)*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011) .................................................................... 10

*Gurney, Becker & Bourne, Inc. v. Benderson Dev. Co.*,
    47 N.Y. 995 (1979) ............................................................................................. 8

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996) ................................................................................. 12

*Hirsch v. London S.S. Owners' Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.)*,
    198 B.R. 45 (S.D.N.Y. 1996) ............................................................................ 3, 11

*IMG Fragrance Brands v. Houbigant, Inc.*,
    679 F. Supp. 2d 395 (S.D.N.Y. 2009) ..................................................................... 9

*In re Adelphia Commc'ns Corp.*,
    No. 03-4942, 2007 WL 1209116 (Bankr. S.D.N.Y. Aug. 17, 2007) .............................. 14

*In re Andrew Velez Const., Inc.*,
    373 B.R. 262 (Bankr. S.D.N.Y. 2007) .................................................................... 11

ii

*In re CIS Corp.*,
    172 B.R. 748 (S.D.N.Y. 1994) ....................................................................................... 11

*In re Fairfield Sentry Ltd.*,
    458 B.R. 665 (S.D.N.Y. 2011) ......................................................................................... 3

*In re Falzerano*,
    454 B.R. 81 (B.A.P. 8th Cir. 2011) ............................................................................... 11

*In re Madison Williams and Co., LLC*,
    509 B.R. 791 (Bankr. S.D.N.Y. 2014) .......................................................................... 11

*James v. Countrywide Fin. Corp.*,
    849 F. Supp. 2d 296 (E.D.N.Y. 2012) ........................................................................... 14

*Johnson v. Priceline.com, Inc.*,
    711 F.3d 271 (2d Cir. 2013) ............................................................................................ 7

*Leadsinger, Inc. v. Cole*,
    No. 05-5606, 2006 WL 2320544 (S.D.N.Y. Aug. 10, 2006) ......................................... 15

*Levy v. Bessemer Trust Co., N.A.*,
    No. 07-1785, 1997 WL 431079 (S.D.N.Y. July 30, 1997) ............................................ 15

*M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp.*,
    247 A.D.2d 515 (2d Dep't 1998) ..................................................................................... 8

*Media Tenor Int'l AG v. Medco Health Solutions, Inc.*,
    No. 13-7223, 2014 WL 2933215 (S.D.N.Y. June 27, 2014) ........................................... 8

*Mid-Hudson Catskill Rural Ministry, Inc. v. Fine Host Corp.*,
    418 F.3d 168 (2d Cir. 2005) .......................................................................................... 10

*Munoz-Nagel v. Guess, Inc.*,
    No. 12-1312, 2013 WL 1809772 (S.D.N.Y. April 30, 2013) ..................................... 7, 13

*Picard v. Merkin (In re Bernard L. Madoff Inv. Securities LLC)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) .......................................................................... 10

*Prince v. Madison Square Garden*,
    427 F. Supp. 2d 372 (S.D.N.Y. 2006) ............................................................................. 7

*In re Teligent, Inc.*,
    325 B.R. 134 (Bankr. S.D.N.Y. 2005) .......................................................................... 12

*Usov v. Lazar*,
    No. 13-818, 2014 WL 4354691 (S.D.N.Y. Sept. 14, 2014) ........................................ 8, 9

iii

*Valentini v. Citigroup, Inc.*,
    837 F. Supp. 2d 304 (S.D.N.Y. 2011)................................................................................. 14

**Statutes**

N.Y. Gen. Oblig. Law § 5-701(a)(2) ........................................................................................ 15

Fed. R. Civ. P. 12(b)(6)................................................................................................... 1, 7, 16

Fed. R. Bankr. P. 7012(b) .................................................................................................... 3, 7

11 U.S.C. § 542(a) ............................................................................................................... 11

11 U.S.C. § 542(b) ...................................................................................................... 2, 11, 12

Defendants Annalou Leibovitz a/k/a Annie Leibovitz, Leibovitz Studio, Inc., 305-307 West 11th Street LLC, and 311 West 11th Street LLC (together, the "Defendants") respectfully move for an order, substantially in the form attached hereto as Exhibit A, dismissing the complaint (the "Complaint") of plaintiff Robert L. Geltzer (the "Trustee"), as chapter 7 trustee for Kenneth Ira Starr, Starr & Company, LLC, and Starr Investment Advisors, LLC (together, the "Debtors"), pursuant to Federal Rule of Civil Procedure 12(b)(6), with prejudice.  In support of their motion, Defendants respectfully state:

## PRELIMINARY STATEMENT

1.      In 2010, Mr. Starr pleaded guilty to operating a Ponzi scheme whereby he defrauded his clients, including Ms. Leibovitz, and stole their money.  Research does not reveal any Ponzi-schemer who successfully sued his victims for failure to pay the reasonable value of his services, yet the Trustee attempts to do just that.  The underlying premise of the Complaint – never specifically alleged – is that the Debtors provided legitimate services for each of the Defendants and in good faith.  However, there is not a single fact referenced in the Complaint alleging any legitimate activity undertaken by any of the Debtors for any of the Defendants.  In addition, the documents attached to the Complaint contradict key allegations therein, there are no allegations referring to two of the Defendants (305-307 West 11th Street LLC and 311 West 11th Street LLC), and key elements of claims are completely missing.

2.      The Complaint seeks $440,306 on account of unspecified "professional services" allegedly rendered by Mr. Starr to Ms. Leibovitz and three of her companies on three alternative grounds: (a) account stated, (b) turnover and (c) quantum meruit.  Notably, the Complaint does not allege a breach of contract claim relating to the supposed "professional services" rendered by the convicted Ponzi schemer.  That is, the Trustee fails to allege Ms. Leibovitz or the corporate Defendants ever agreed to pay these funds.  Instead, the Trustee pleads two quasi-contract claims

1

plus a turnover claim which hinges on the success of the quasi-contract claims.  Each such claim

fails to state a cognizable claim for relief.

     3.    <u>Account Stated</u>.  The "statements" the Trustee relies upon – all attached to the

Complaint – reveal Mr. Starr sent the same to his own office, as one would expect of a convicted

Ponzi schemer.  The Trustee alleges they nevertheless provide a good faith basis to assert an

account stated claim, but New York law is clear there can be no account stated claim absent an

underlying contractual agreement.

     4.    <u>Quantum Meruit</u>.  The Trustee conclusorily alleges each Debtor performed

unspecified "professional services for the benefit of the Defendants in good faith," as evidenced

by the "statements."  Complaint at ¶40.  However, there are no facts in the Complaint supporting

any allegation that the convicted Ponzi schemer performed any professional services for any

Defendant, much less in "good faith."  Instead, the Complaint acknowledges Mr. Starr is currently

in jail for defrauding his clients.  The Trustee further alleges the "statements" issued by Mr. Starr

to himself demonstrate each Debtor had a reasonable expectation it would be compensated, but the

Complaint is devoid of facts justifying this conclusion.  Finally, the Trustee concludes, without

any basis whatsoever, $440,306 is the reasonable value of the unspecified services provided by the

Debtors.

     5.    <u>Turnover</u>.  The Trustee's Bankruptcy Code section 542(b) turnover claim must fail,

both because it hinges on the existence of valid account stated and quantum meruit claims and

because the Trustee's Complaint acknowledges the debt is disputed.

     6.    <u>Breach of Contract</u>.  Finally, and perhaps most egregiously, the Trustee asserts a

breach of contract claim for nearly $600,000 against each Defendant out of thin air.  The Trustee

all but admits that he discovered no written contract for this alleged and completely fictitious loan

from "the Debtors" to "the Defendants."  The Trustee also pleads no facts supporting the existence

of an oral agreement. The Trustee pleads the alleged contract was entered into in or about April 2009, but without a written or oral contract there are no facts in the Complaint to support any allegation any such contract was formed. Absent any facts suggesting the existence of an oral or written contract, the Trustee implausibly alleges each Defendant agreed to repay monies transferred from an IOLA account controlled by the Debtors' also convicted former attorney, Jonathan Bristol, formerly of Winston & Strawn LLP, back to all three Debtors at some unspecified time. This claim must be dismissed as well.

## STATEMENT PURSUANT TO RULE 7012(b)

7.       This proceeding is non-core and Defendants do not consent to entry of final orders or judgments by the Court.[1]

## STATEMENT OF FACTS

8.       On May 26, 2010, the United States filed a criminal complaint against Mr. Starr. As described by the Trustee in his motion to substantively consolidate the Debtors' estates, filed September 16, 2011 [Case No. 11-10219, Docket No. 47] (the "SubCon Motion"), the United States asserted Mr. Starr, through the other Debtors,

> committed various forms of fraud and misappropriation of client assets, including unauthorized transfers of client funds to Starr's own accounts and that Starr defrauded his clients by inducing them to invest in risky, illiquid businesses and ventures in which he, his wife or other associates held material interests.

SubCon Motion at ¶3.[2]

---

[1] The Trustee's turnover claim does not render this proceeding core. *See In re Fairfield Sentry Ltd.*, 458 B.R. 665, 683 (S.D.N.Y. 2011) ("Numerous courts have held that an action is non-core when property which is the subject of a significant dispute between the parties is sought to be recovered through a turnover action"); *Hirsch v. London S.S. Owners' Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.)*, 198 B.R. 45, 50 n.7 (S.D.N.Y. 1996) ("It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute").

[2] Both the criminal complaint and SubCon Motion are incorporated by reference into the Complaint. Complaint at ¶¶11 and 17.

3

9.      That same day, the Securities and Exchange Commission (the "SEC") filed a civil enforcement proceeding against the Debtors.  As described in the SubCon Motion, the SEC asserted "that the Debtors had perpetrated a fraudulent scheme, abusing the signatory power they had with respect to their clients' bank and investment accounts, and misappropriating client funds for their own purposes."  *Id*. at ¶4.  The SEC sought and obtained a receiver for the corporate Debtors.  Complaint at ¶13.

10.     On September 10, 2010, Mr. Starr pleaded guilty to, among other things, "running a Ponzi scheme."  *Id*. at ¶14.  He is currently serving a seven-and-a-half year term in federal prison in Otisville, New York.  *Id*.

11.     The Trustee's Complaint is pleaded "on information and belief" acquired from (a) "available internal corporate documents and records of the debtors," (b) "documents and information obtained from other sources," and (c) publicly available documents.  In a lengthy footnote, the Trustee explains what "records of the debtors" means.  Specifically, he states "over the course of many years, it was found that" the Debtors billed their clients on one of three bases (hourly, monthly, or transactional).  *Id*. at n.2.  Notably, the Trustee does not allege ever finding a record indicating the Debtors entered into loan transactions with their clients, whereby the Debtors would advance funds and clients would subsequently repay them.

12.     The Trustee claims between December 2008 and April 2010, "the Debtors" rendered "professional services," including "tax preparation services, investment advisory services and other financial-related services," to "the Defendants."  *Id*. at ¶19.

13.     The Trustee alleges between January 2009 and May 2010, "the Debtors provided the Defendants with monthly statements of account which reflected the outstanding fees and expenses due from the Defendants in connection with the Professional Services."  *Id*. at ¶20.  The Trustee attached these documents as Exhibit A, which are not "statements of account" at all, but

4

rather are self-described as "invoices."[3]  Each monthly invoice bills Ms. Leibowitz, but not any

other Defendants, $25,000 plus miscellaneous expenses.

14.     With one exception,[4] each invoice is addressed from Starr & Company, LLC to

Starr & Company, LLC, as follows:

> Ms. Annie Leibovitz
> c/o Starr & Company, LLC
> 850 Third Avenue
> New York, NY 10022

Although all but one of the invoices were addressed to Starr & Company, LLC, the Trustee

concludes (in Count One, but not his statement of facts) Ms. Leibovitz retained the statements

without objection.  *Id*. at ¶31.  Not a single invoice mentions any other Defendants or specifies

what services, if any, were performed for the benefit of any Defendant.

15.     The Trustee does not allege any Defendant agreed to be billed in such manner.

16.     The Trustee acknowledges Defendants dispute they owe any amount to the Debtors.

*Id*. at ¶22.

17.     In support of the Trustee's breach of contract claim, the Trustee states, upon

information and belief, in or about April 2009 "the Debtors and the Defendants entered into an

agreement whereby … the Debtors agreed to make payments to the Defendants and/or to third

---

[3] The Trustee alleges the "statements" reflect outstanding fees due, but not a single invoice shows amounts due from a prior period.  Strangely, the Complaint never states any monthly invoice was unpaid.  The reason for this (which is beyond the confines of this motion, as all plausible facts pleaded by the Trustee must be accepted as true at this stage) is that the Trustee knows all amounts were simply deducted from Ms. Leibovitz's accounts.  The Trustee attempts to avoid this issue by stating he performed calculations indicating the amounts sought "are a reasonable reflection of the amounts owed by the Defendants to the Debtors' estate," but does not explain how this conclusion was reached.  Complaint at n.2.

[4] The final invoice, dated June 1, 2010 for services allegedly rendered in May 2010, the month the Debtors' Ponzi scheme collapsed, is addressed to Ms. Leibovitz care of her undersigned attorneys.  The Trustee does not appear to assert a claim on account of this invoice, as the Trustee only asserts claims for services allegedly rendered through April 2010, and statements provided through May 2010.  Complaint at ¶¶19-20.

parties on behalf of the Defendants" and the Debtors agreed to subsequently repay the same. *Id.* at ¶24.

18.     Unlike the allegations pleaded in support of the Trustee's "professional services" claims, the Trustee provides no information in support of his belief concerning the existence of this agreement. *Compare id.* at n.2. The Complaint does not plead any of the alleged agreement's terms, including the date(s) of repayment, which Defendants would repay which Debtors, the rate of interest for funds advanced, or any other basic terms associated with agreements to advance funds in exchange for a promise of repayment. The Complaint also fails to allege whether the Debtors agreed to make payments from Ms. Leibovitz's funds or from the Debtors' funds, only that the Debtors would "make payments." *Id.* at ¶24.

19.     By failing to allege a writing, by failing to describe any of the alleged agreement's terms, by failing to state the date the agreement was entered into, and by failing to rely on the Debtors' internal books and records, as the Trustee does in support of his "professional services" claims, the Complaint implies the agreement was oral. *Id.*

20.     The Trustee alleges between April and October 2009, six transfers totaling approximately $1.29 million were made to Leibovitz Studio, Inc. from an IOLA account maintained by Mr. Bristol. *Id.* at ¶25. The Trustee also alleges between April and September 2009, an additional nine transfers totaling approximately $1.96 million were made from the IOLA account for the benefit of the four Defendants. *Id.* at ¶26. The Complaint does not allege Mr. Starr had any role in effecting the foregoing transfers, and acknowledges $2.7 million of the $3.25 million at issue never belonged to the Debtors. *Id.* Specifically, the Trustee claims of the approximately $3.25 million transferred from Mr. Bristol's IOLA account to Leibovitz Studio, Inc., or otherwise for the benefit of unspecified Defendants, $2.5 million was paid out of funds of Stacy Lloyd and $200,000 was paid out of funds of Fred Hochburg. *Id.* The Trustee concludes

6

that the balance of the transfers emanating from Mr. Bristol's IOLA account in the amount of $594,796 "were paid from funds of the Debtors that had been deposited into the Bristol IOLA account." *Id*. The Trustee pleads no facts to support this remarkable and complex conclusion in this Ponzi-scheme bankruptcy.

## ARGUMENT

### I.    LEGAL STANDARD FOR MOTION TO DISMISS

21.    Rule 12(b)(6) applies to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012(b). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a "plausible" claim for relief. *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). A claim is "plausible" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). *See also Twombly*, 550 U.S. at 557 (factual allegations must "possess enough heft to show that the pleader is entitled to relief").

22.    While "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" *Munoz-Nagel v. Guess, Inc.*, No. 12-1312, 2013 WL 1809772, at *3 (S.D.N.Y. April 30, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) and *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006)).

23.    Courts deciding motions to dismiss must limit their review to facts and allegations in the complaint, documents incorporated into the complaint by reference or attached as an exhibit, and matters of which the court may take judicial notice. *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

## II.      THE TRUSTEE'S $440,307 PROFESSIONAL SERVICES CLAIMS MUST BE DISMISSED AS AGAINST ALL DEFENDANTS

24.      The Trustee asserts three claims – account stated, quantum meruit, and turnover – calling for the payment of $440,306.89 on account of unspecified "professional services" rendered by "the Debtors" to "the Defendants."  None of these claims state a cause of action.

### A.      The Account Stated Claim Must be Dismissed

#### 1.      The Account Stated Claim Fails to Allege an Underlying Agreement

25.      An "account stated" is "an agreement, independent of the underlying agreement, regarding the amount due on past transactions."  *Usov v. Lazar*, No. 13-818, 2014 WL 4354691, at *9 (S.D.N.Y. Sept. 14, 2014) (citations omitted).

26.      It is well established "an account stated cannot be made the instrument to create liability when none exists."  *Gurney, Becker & Bourne, Inc. v. Benderson Dev. Co.*, 47 N.Y. 995, 996 (1979); *M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp.*, 247 A.D.2d 515, 516 (2d Dep't 1998) (account stated doctrine "cannot be used to create liability where none otherwise exists").

27.      Therefore, to plead an account stated claim against the Defendants, the Complaint must allege the existence of an underlying agreement to which all four Defendants are party.  *See Media Tenor Int'l AG v. Medco Health Solutions, Inc.*, No. 13-7223, 2014 WL 2933215, at *8 (S.D.N.Y. June 27, 2014) ("Media Tenor argues that the existence of the underlying agreement … is in fact necessary for an account stated claim.  This is true"); *Cyberlease, LLC v. JPMorgan Chase Bank*, No. 04-1221, 2005 WL 2030317, at *6 n.7 (S.D.N.Y. Aug. 22, 2005) ("We also agree with Chase's principal objection to Counts IV and V, for breach of the implied covenant of good faith … and account stated, that these claims cannot exist without an underlying contract.").  Here,

the Trustee fails to allege an agreement between any Defendant and any Debtor for the provision of professional services.

2.    The Account Stated Claim Fails to Plead any of the Claim's Specific Elements

28.    Where an underlying agreement exists, "[t]o state a claim for an account stated, a plaintiff must plead that '(1) an account was presented; (2) it was accepted as correct; and (3) debtor promised to pay the amount stated.'" *Usov*, 2014 WL 4354691, at *9.

29.    None of these elements have been satisfied.

30.    Putting aside the fact that the invoices at issue were generated in furtherance of Mr. Starr's Ponzi scheme, the invoices rebut the Trustee's conclusion that an account was ever presented to the Defendants.  As noted above, the invoices are addressed to Ms. Leibovitz, and not any other Defendants, "care of" Starr & Company, LLC.  The Trustee alleges the invoices were provided to the Defendants and that Ms. Leibovitz "retained [the invoices] without objection," Complaint at ¶¶20 and 31, but does not state facts on which this belief is based, and certainly does not allege any Defendant other than Ms. Leibovitz ever "retained" any invoice.

31.    Finally, there can be no account stated claim "where any dispute about the account is shown to have existed."  *IMG Fragrance Brands v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009); *DiMare Homestead, Inc. v. Alphas Co. of N.Y., Inc.*, No. 09-6644, 2012 WL 1155133, at *22 (S.D.N.Y. April 5, 2012) ("[r]ecovery premised upon an account stated will fail where a dispute about the account can be shown to have existed").  The Trustee acknowledges the existence of a dispute concerning the validity of the debt alleged to be evidenced by the invoices. Complaint at ¶¶21-23.  Moreover, removal of this acknowledgement will not cure this defect because the Court may take judicial notice the invoices are disputed.  *See Blue Tree Hotels*, 369 F.3d at 217 (cited above).

9

## B.    The Quantum Meruit Claim Must be Dismissed

32.    To state a quantum meruit claim under New York law, a plaintiff must allege "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services."  *Mid-Hudson Catskill Rural Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).

33.    None of these elements have been satisfied.

34.    <u>Good Faith Performance of Services</u>.  The Complaint does not allege the Debtors ever performed services for Defendants, let alone in good faith.  Paragraph 10 states the Debtors had "managed the financial and related personal affairs of, and served as investment advisor for, numerous clients," but does not state any services were rendered to Defendants.  Footnote 2 states the Trustee's "due diligence review of the Debtors' books and records revealed … significant services were performed by the Debtors for the benefit of certain of their clients," but likewise does not allege facts upon which the Court can plausibly find any services were rendered to Defendants.   Moreover, the Complaint acknowledges that the Debtors operated a Ponzi scheme under the guise of a financial services firm during the period in which the invoices at issue were generated, which in turn resulted in the commencement of SEC, criminal, and bankruptcy proceedings against the Debtors.   It is well established a debtor's Ponzi scheme-related transactions are presumptively fraudulent and not in good faith.  *See Picard v. Merkin (In re Bernard L. Madoff Inv. Securities LLC)*, 515 B.R. 117, 149 n.19 (Bankr. S.D.N.Y. 2014) (citing *Gowan v. Patriot Group, LLC (In re Dreier LLP)*, 452 B.R. 391, 423 (Bankr. S.D.N.Y. 2011)).

35.    <u>Acceptance of Services by Defendants</u>.  The Complaint does not identify any services rendered by the Debtors to or for the benefit of any Defendant, let alone indicate any Defendant's acceptance of such services.

36.    <u>Expectation of Compensation</u>.    The Complaint lacks any allegation the Debtors expected the Defendants to satisfy any debts alleged to be evidenced by the invoices.    The Trustee does not refer to any underlying agreement between the parties and the invoices which form the basis for the Trustee's claim on their face are addressed to Starr & Company, LLC.

37.    <u>Reasonable Value of Services</u>.    The Complaint does not identify any services rendered by the Debtors to or for the benefit of any of any Defendant, or otherwise provide a basis for ascribing a value of $25,000 per month to such services.

### C.    The Turnover Claim Must be Dismissed

38.    Section 542(b) of title 11 of the United States Code provides "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553."[5]

39.    It is "well-settled law … § 542(b) cannot be used to recover a disputed pre-petition debt." *In re Madison Williams and Co., LLC*, 509 B.R. 791, 799 (Bankr. S.D.N.Y. 2014) (quoting *In re Teligent, Inc.*, 325 B.R. 134, 138 (Bankr. S.D.N.Y. 2005)); *Seatrain Lines*, 198 B.R. at 50 n.7 ("the debtor cannot use the turnover provisions to liquidate contract disputes"); *In re CIS Corp.*, 172 B.R. 748, 760 (S.D.N.Y. 1994) (section 542(b) creates "a strong textual inference that an action should be regarded as a turnover only when there is no legitimate dispute over what is owed to the debtor").

---

[5] The Trustee does not specify whether he is asserting a section 542(a) or (b) turnover claim.  However, as section 542(a) only provides for the turnover of "property that the trustee may use, sell, or lease," and does not provide a mechanism for a trustee to recover a debt, Defendants assume the Trustee is seeking relief under section 542(b).  *See In re Andrew Velez Const., Inc.*, 373 B.R. 262, 273 (Bankr. S.D.N.Y. 2007) ("Because a … debt is not property that the trustee can use, sell, or lease, § 542(a) is inapplicable"); *In re Falzerano*, 454 B.R. 81, 85 (B.A.P. 8th Cir. 2011) ("Under the plain language of the statute … actions to collect a debt owed to the estate are governed by § 542(b), not §542(a)").

40.      As noted above, paragraphs 21-23 of the Complaint acknowledge Defendants dispute the invoices' validity, and the Court may take judicial notice of such dispute even in an amended complaint.

41.      Moreover, the alleged debt at issue cannot be "matured, payable on demand, or payable on order" as the Trustee has not alleged the existence of an underlying contract.  Even if the debt at issue somehow qualified as matured or payable for section 542(b) purposes, the Trustee makes no attempt to calculate the extent to which Defendants are entitled to offset amounts owed to them pursuant to section 553.

> **D.      At the Very Least, the Professional Services Claims Must be Dismissed as against the Corporate Defendants**

42.      At the very least, Counts 1-3 must be dismissed as against all Defendants other than Ms. Leibovitz.  With regard to the account stated claim, the Trustee does not allege that any invoices were accepted by any corporate Defendant.  With regard to the quantum meruit claim, neither the Complaint nor the invoices states professional services were rendered for the benefit of any corporate Defendant.  Because the turnover claim hinges on the success of the account stated and quantum meruit claims, this claim must be dismissed as against the corporate Defendants as well.

## III.    THE TRUSTEE'S $594,796 BREACH OF CONTRACT CLAIM MUST BE DISMISSED AS AGAINST ALL DEFENDANTS

43.      To state a breach of contract claim under New York law, a plaintiff must adequately allege the following elements: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

44.      None of these elements have been satisfied.

45.    <u>Existence of Agreement</u>.  The Trustee states, upon information and belief, that in or about April 2009 (the month/year of the first transfers forming the basis for the Trustee's claim) the Defendants and Debtors entered into a presumably-oral agreement whereby the Debtors would make payments to Defendants or for their benefit and Defendants would subsequently reimburse the Debtors for such payments.  Complaint at ¶24.  However, under *Twombly* and *Iqbal*, the Trustee may not make allegations upon information and belief unless he also specifies the basis for his information and belief.  *See Munoz-Nagel*, 2013 WL 1809772, at *3 (quoted above); *Gentile v. Conley*, 636 F. Supp. 2d 246, 252 (S.D.N.Y. 2009) (plaintiff "must plead facts from which the court could infer that its claim for breach [is valid].  And if [plaintiff] pleads those facts on information and belief, then it must specify the basis for its information and belief" to satisfy applicable pleading requirements).  Here, the Trustee has provided no basis for his belief concerning the existence of the alleged "April 2009" agreement, and a close reading of the Complaint reveals no possible basis.[6]  The Trustee alleges he reviewed the Debtors' internal records and found the Debtors billed for services performed on three bases, but does not allege having found documents supporting a fourth basis for billing clients – loans from the Debtors to their clients.  Similarly, the Trustee does not allege he ever interviewed Mr. Starr (or if the Trustee did, having a good faith basis to believe Mr. Starr).  The Trustee alleges no basis for his information and belief that such a non-written, open-ended, lending agreement was entered into among the three Debtors and four Defendants.

46.    <u>Adequate Performance by the Debtors</u>.  Even if the Court were to find the Trustee adequately pleaded the existence of an agreement, the Trustee does not state the Debtors performed

---

[6] The April 2009 date appears to have been chosen because the first transfers alleged to have been made for Defendants' benefit occurred then.

13

under the same.  Under the alleged agreement, "the Debtors agreed to make payments <u>directly</u> to the Defendants and/or to third parties on behalf of the Defendants."  Complaint at ¶24. However, the Complaint states from April-September 2009, approximately $3.25 million was transferred to Defendants or for their benefit "by way of funds drawn from an IOLA account that was being maintained by the Debtors' then-attorney Jonathan Bristol."  *Id*. at ¶25-26.  As the Trustee does not allege the Debtors owned or controlled the IOLA account, the Trustee states the transfers at issue were made not by the Debtors, but by Mr. Bristol, whose IOLA account the Complaint acknowledges included funds from a variety of third parties other than the Debtors.  *Id*. at ¶26.

47.    <u>Contract Breach</u>.  To survive a motion to dismiss the Trustee must be far more specific concerning the terms of the agreement alleged to have been breached and manner in which they were breached by each Defendant.  *See Abraham v. Am. Home Mortg. Serv., Inc.*, 947 F. Supp. 2d 222, 235 (E.D.N.Y. 2013) (quoting *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 327 (S.D.N.Y. 2011)) ("To survive a motion to dismiss a contract claim, the 'Plaintiff must provide specific allegations as to … the terms of the agreement, and what provisions of the agreement were breached as a result of the acts at issue'"); *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296 (E.D.N.Y. 2012) (granting motion to dismiss where plaintiff "has not specified the terms of the agreement that defendant purportedly breached"); *In re Adelphia Commc'ns Corp.*, No. 03-4942, 2007 WL 1209116, at *5 (Bankr. S.D.N.Y. Aug. 17, 2007) ("To survive a motion to dismiss, the Equity Committee must, at a minimum, allege the terms of the contract and elements of the alleged breach with respect to each defendant … The equity Committee failed to do so … The vague allegations of the Equity Committee's complaint fall short of the 'short and plain statement of the claim showing that the pleader is entitled to relief'").  The Complaint merely states that $594,796 was "paid from funds of the Debtors that had been deposited in the Bristol IOLA Account" to Leibovitz Studio, Inc. or for Defendants' benefit and that this amount was not subsequently repaid.

14

The Complaint does not state whether the alleged agreement included any terms governing repayment or whether such terms were breached, which is fatal to the Trustee's claim.   *See Leadsinger, Inc. v. Cole*, No. 05-5606, 2006 WL 2320544, at *10 (S.D.N.Y. Aug. 10, 2006) (dismissing breach of contract claim alleging failure to repay advance payments where contract at issue was "silent on the parties' obligations concerning [such] advances"); *Levy v. Bessemer Trust Co., N.A.*, No. 07-1785, 1997 WL 431079, at *5 (S.D.N.Y. July 30, 1997) (dismissing breach of contract claim where complaint failed to adequately allege contract's existence or that alleged representations that were not honored formed a part of such contract).

48.   <u>Damages</u>.  The Trustee does not offer any explanation as to how his alleged contract damages were calculated.  The Trustee states, upon information and belief, $594,796 in transfers made to Defendants or for their benefit are traceable to funds the Debtors deposited in Mr. Bristol's IOLA account, but does not plead facts explaining the basis for the Trustee's belief or otherwise explaining in adequate detail the Trustee's damages calculation.

49.   <u>Statute of Frauds</u>.  The Trustee suggests under the agreement at issue, all four Defendants are liable for each transfer made from Mr. Bristol's IOLA account to or for the benefit of a Defendant.  However, such an agreement must be in writing pursuant to New York's statute of frauds, which provides any promise to repay the debts of another person must be in writing.  *See* N.Y. Gen. Oblig. Law § 5-701(a)(2) ("Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking … [i]s a special promise to answer for the debt, default or miscarriage of another person").[7]

---

[7] The Trustee states $1.29 million was transferred to Leibovitz Studio, Inc. and $1.96 million was transferred in order to pay "various expenses incurred by the Defendants," but $2.7 million of the foregoing amounts were <u>not</u> paid by the Debtors.  Complaint ¶26.  However, the Complaint fails to state which of the 15 transfers at issue were actually paid from Debtor funds, for which Defendant's benefit each of the transfers totaling $1.96 million was made, and which Defendant is liable on each such transfer, thereby preventing Defendants from performing a complete analysis

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court enter an order,

substantially in the form attached hereto as Exhibit A, dismissing the Trustee's Complaint as

against all Defendants pursuant to Rule 12(b)(6), with prejudice.

Dated: April 30, 2015                                      Respectfully submitted,
New York, New York

/s/ Avery Samet
Bijan Amini
Avery Samet
Jeffrey Chubak
STORCH AMINI & MUNVES PC
2 Grand Central Tower, 25th Floor
140 East 45th Street
New York, New York 10017
Tel: (212) 490-4100

*Attorneys for Defendants*

---

concerning the extent to which breach of contract claims against each Defendant must be dismissed on statute of frauds grounds.

16

## **EXHIBIT A**

**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>KENNETH IRA STARR, *et al.*,<br><br>        Debtors.<br><hr>ROBERT L. GELTZER, AS CHAPTER 7<br>TRUSTEE OF KENNETH IRA STARR, STARR<br>& COMPANY, LLC, AND STARR<br>INVESTMENT ADVISORS, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>ANNALOU LEIBOVITZ a/k/a ANNIE<br>LEIBOVITZ, LEIBOVITZ STUDIO, INC., 305-<br>307 WEST 11th STREET LLC, and 311 WEST 11th<br>STREET LLC,<br><br>        Defendants. | Chapter 7<br><br>Case No. 11-10219 (MEW)<br><br>Jointly Administered<br><br>Substantively Consolidated<br><br><br><br><br>Adv. Pro. No. 14-2446 (MEW) |

## <u>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS</u>

Upon the motion, filed April 30, 2015 (the "<u>Motion</u>"), of defendants Annalou Leibovitz

a/k/a Annie Leibovitz, Leibovitz Studio, Inc., 305-307 West 11th Street LLC, and 311 West 11th

Street LLC, for an order dismissing the complaint, filed December 30, 2014 (the "<u>Complaint</u>") by

plaintiff Robert L. Geltzer, as chapter 7 trustee for Kenneth Ira Starr, Starr & Company, LLC, and

Starr Investment Advisors, LLC, pursuant to Federal Rule of Civil Procedure 12(b)(6), with

prejudice, all as more fully described in the Motion; and the Court having jurisdiction to consider

the Motion and the relief requested therein pursuant to  28 U.S.C. §§ 157 and 1334; and  due and

proper notice of the Motion having been provided; and a hearing having been held to consider the

relief requested in the Motion; and upon the record of the hearing and all of the proceedings had

1

before the Court; and the Court having found that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is hereby ORDERED:

1.      Defendants' Motion is granted.

2.      Plaintiff's Complaint is dismissed, with prejudice.

3.      The Court shall retain jurisdiction to hear and determine all matters related to this

order.

Dated: _____, 2015
        New York, New York

_____
Honorable Michael E. Wiles
United States Bankruptcy Judge

**<u>Certificate of Service</u>**

I hereby certify under penalty of perjury that on April 30, 2015, I caused the foregoing Notice of Hearing on Defendants' Motion to Dismiss to be served via the Court's electronic case filing system and first class mail on plaintiff Robert L. Geltzer's counsel at the following address:

Robert A. Wolf
Gregory J. Skiff
Tarter Krinsky & Drogin LLP
1350 Broadway, 11th Floor
New York, New York 10018


By: /s/ Avery Samet
Avery Samet