Bijan Amini
Avery Samet
Jeffrey Chubak
STORCH AMINI & MUNVES PC
2 Grand Central Tower, 25th Floor
140 East 45th Street
New York, New York 10017
(212) 490-4100

*Attorneys for Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>KENNETH IRA STARR, *et al.*,<br><br>           Debtors. | Chapter 7<br><br>Case No. 11-10219 (MEW)<br><br>Jointly Administered<br><br>Substantively Consolidated |
| ROBERT L. GELTZER, AS CHAPTER 7<br>TRUSTEE OF KENNETH IRA STARR, STARR<br>& COMPANY, LLC, and STARR INVESTMENT<br>ADVISORS, LLC,<br><br>           Plaintiff,<br><br>           v.<br><br>ANNALOU LEIBOVITZ a/k/a ANNIE<br>LEIBOVITZ, LEIBOVITZ STUDIO, INC., 305-<br>307 WEST 11th STREET LLC, and 311 WEST 11th<br>STREET LLC,<br><br>           Defendants. | Adv. Pro. No. 14-2446 (MEW) |

<u>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ........................................................................................................................4

I.      THE BREACH OF CONTRACT CLAIM MUST BE DISMISSED AS AGAINST ALL
        DEFENDANTS, WITH PREJUDICE..........................................................................4

      A.      The Complaint Does Not Recite the Basis for the Trustee's Belief a Contract
                Exists......................................................................................................5

      B.      The Complaint Does Not Allege Breach ...............................................7

      C.      Adequate Performance by the Debtors; Damages ...................................8

      D.      Statute of Frauds .....................................................................................8

II.     THE QUANTUM MERUIT CLAIM MUST BE DISMISSED AS AGAINST ALL
        DEFENDANTS, WITH PREJUDICE..........................................................................9

      A.      The Quantum Meruit Claim Must be Dismissed ....................................9

      B.      At the Very least, the Quantum Meruit Claim Must be Dismissed as Against the
                Corporate Defendants ..........................................................................10

III.    THE TRUSTEE SHOULD NOT BE GRANTED LEAVE TO AMEND TO RECAST HIS
        ACCOUNT STATED CLAIM AS A BREACH OF CONTRACT CLAIM ....................11

CONCLUSION.....................................................................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
  626 F.3d 699 (2d Cir. 2010) ...................................................................................11

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010)......................................................................................5

*Bagel Bros. Maple, Inc. v. Ohio Farmers, Inc.*,
  279 B.R. 55 (W.D.N.Y. 2002) ...................................................................................8

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,
  No. 03-cv-1537, 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ..............................6

*Berman v. Sugo LLC*,
  580 F. Supp. 2d 191 (S.D.N.Y. 2008).......................................................................6

*DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*,
  770 F. Supp.2d 497 (E.D.N.Y. 2011) .......................................................................9

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,
  282 F.3d 83 (2d Cir. 2002).....................................................................................11

*Fillmore East BS Fin. Subsidiary LLC v. Capmark Bank*,
  552 Fed. Appx. 13 (2d Cir. 2014) .............................................................................5

*Lan v. Time Warner, Inc.*,
  No. 11-cv-2870, 2013 WL 1703584 (S.D.N.Y. April 19, 2013) ...............................7

*Leibowitz v. Cornell Univ.*,
  445 F.3d 586 (2d Cir. 2006)................................................................................7, 10

*Leibowitz v. Cornell Univ.*,
  No. 03-cv-9976, 2005 WL 267560 (S.D.N.Y. Feb. 3, 2005) .....................................9

*Maas v. Cornell Univ.*,
  94 N.Y.2d 87 (1999) ................................................................................................7

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007).....................................................................................11

*Munoz-Nagel v. Guess, Inc.*,
  No. 12-cv-1312, 2013 WL 1809772 (S.D.N.Y. April 30, 2013) ...............................5

*Nadel v. Play-by-Play Toys & Novelties, Inc.*,
   208 F.3d 368 (2d Cir. 2000) ........................................................................6

*Nat'l Gear and Piston, Inc. v. Cummins Power Sys., LLC*,
   861 F. Supp. 2d 344 (S.D.N.Y. 2012) .........................................................7

*Posner v. Minn. Mining & Mfg. Co.*,
   713 F. Supp. 562 (E.D.N.Y. 1989) ...............................................................6

*Prince v. Madison Square Garden*,
   427 F. Supp. 2d 372 (S.D.N.Y. 2006) .........................................................5

*Singerman v. Reyes*,
   240 A.D.2d 335 (1st Dep't 1997) .................................................................9

*Williams v. Calderoni*,
   No. 11-cv-3020, 2012 WL 69183 (S.D.N.Y. Mar. 1, 2012) .........................5

*Window Headquarters, Inc. v. MAI Basic Four, Inc.*,
   No. 91-cv-1816, 1993 WL 312899 (S.D.N.Y. Aug. 12, 1993) .....................6

## Statutes

N.Y. Gen. Oblig. Law § 5-701(a)(2) ..................................................................2

## Rules

Fed. R. Bankr. P. 7015 .......................................................................................11

Fed. R. Civ. P. 12(b)(6) .......................................................................................1

Fed. R. Civ. P. 15(a) ..........................................................................................11

## Other Authorities

Charles A. Wright & Arthur R. Miller, 6 Fed. Prac. & Proc. Civ. § 1487 ....................11

Defendants Annalou Leibovitz a/k/a Annie Leibovitz, Leibovitz Studio, Inc., 305-307 West 11th Street LLC, and 311 West 11th Street LLC (together, the "Defendants") submit this reply in support of their motion, filed April 30, 2015 [Docket No. 6] (the "Motion"), for an order dismissing the complaint [Docket No. 1] (the "Complaint") of plaintiff Robert L. Geltzer, as chapter 7 trustee (the "Trustee") for Kenneth Ira Starr, Starr & Company, LLC ("StarCo"), and Starr Investment Advisors, LLC (together, the "Debtors"), pursuant to Federal Rule of Civil Procedure 12(b)(6), with prejudice, and respectfully state:

**PRELIMINARY STATEMENT**

1.      The Complaint asserted four claims against Defendants:

- Professional Services. Three claims (account stated, turnover, quantum meruit) seek recovery of $440,307 on account of "professional services" allegedly rendered by "the Debtors" to "the Defendants," evidenced only by invoices addressed from StarCo to Ms. Leibovitz (not the other Defendants) "care of" StarCo, dated during the months leading up to the collapse of the Debtors' Ponzi scheme and which do not so much as list a single service allegedly rendered.

- Breach of Contract Claim. One breach of contract claim seeks recovery of $594,796 allegedly transferred to/for Defendants' benefit from an IOLA account maintained by the Debtors' former attorney (nondebtor, felon Jonathan Bristol), which funds the Trustee alleges (a) are traceable to the Debtors' funds, and (b) Defendants agreed to repay to the Debtors before the transfers were made.

2.      The Motion argues none of the foregoing counts states a valid claim.  In his memorandum of law in response [Docket No. 10] (the "Opp."), the Trustee withdrew two claims (account stated and turnover) and asked this Court for permission to re-plead the former as a breach of contract claim, but ignored the vast majority of arguments raised by Defendants in support of dismissal of all claims.

3.      The Trustee's remaining claims (quantum meruit and breach of contract) should be dismissed, with prejudice, and his procedurally-improper request for leave to amend should be denied.

1

4.     Breach of Contract (Count 4).  As noted in the Motion (¶¶22, 45), because the Complaint is pled on information and belief, the Trustee must recite the basis for his belief each element of a claim is satisfied to satisfy pleading requirements under *Iqbal* and *Twombly*.  Instead, the Trustee argues a breach of contract claim may be "inferred" from his allegation $3.3 million in transfers were made to/for Defendants' benefit from a nondebtor's IOLA account, which transfers the Complaint states are traceable almost exclusively to nondebtor funds.  However, no contract may be inferred from this allegation, and the Trustee does not recite the basis for any element of a breach of contract claim.  He has not pled the existence of a written agreement, and the Complaint does not recite facts from which an oral or implied-in-fact contract may be inferred. Nor does the Trustee recite the basis for his belief the Debtors  performed under any such contract while Defendants did not, or that $594,796 in transfers are traceable to the Debtors', as opposed to Defendants', funds.  In addition, the Trustee's argument his breach of contract claim need not be premised on a written agreement under N.Y. Gen. Oblig. Law § 5-701(a)(2) (the "Statute of Frauds") ignores the legal separateness of each Defendant, and the Complaint does not recite facts on which a veil piercing claim may be premised.

5.     Quantum Meruit (Count 3).  The Trustee argues the Complaint states a valid quantum meruit claim because it recites, in a conclusory manner, the elements of a quantum meruit claim.  This is insufficient to satisfy pleading requirements: nowhere does the Trustee recite the basis for his belief (a) professional services were rendered to the Defendants, (b) the Defendants accepted such services, (c) the Debtors had a legitimate expectation of compensation, and (d) concerning the value of such services.  Moreover, the Complaint nowhere alleges the alleged professional services went unpaid.  Instead, the Complaint cryptically asserts it is "the Trustee's position that the Defendants owe the Debtors' estate." (Complaint ¶21.)  However, nothing in the

Complaint (including footnote 2 thereof, the Trustee's boilerplate language indicating all allegations pled on information and belief are based on his general review of the Debtors' records) alleges any basis for this "position" of the Trustee. Under New York law, no cause of action may be premised on the "position" that money is owing based on generalized information and belief. The Trustee has the burden to actually do his diligence and allege particularized professional services and that specific invoices went unpaid. If he cannot do so (likely because of the state of the Debtor Ponzi schemers' records) he has no claim.

6.    <u>Proposed Amendment</u> (Count 1). The Trustee's proposed amendment would plainly be futile, as the amended breach of contract claim (in lieu of his account stated claim) would not satisfy pleading requirements. The Trustee's amended complaint in the Barish proceeding, a copy of which is attached as <u>Exhibit A</u> (without exhibits), merely recites, in a conclusory manner, a contract was formed and it was breached, and the Opp. does not elaborate concerning what facts would be recited in an amended Complaint against Defendants on which a breach of contract, professional services claim may be premised. In addition, the Trustee's proposed amendment would be futile because the Trustee had four years to investigate professional services claims against the Defendants and the best he could come up with was quasi-contract, account stated and quantum meruit claims, one of which was dismissed in the Barish proceeding (account stated) and both of which are inconsistent with a breach of contract claim. That the Trustee did not assert a breach of contract claim in the first instance makes clear there is no contract, or at a minimum, he has no evidentiary support for his claim and does not believe he will discover support.

7.    Accordingly, the Complaint should be dismissed, with prejudice.

**ARGUMENT**

**I.    THE BREACH OF CONTRACT CLAIM MUST BE DISMISSED AS AGAINST ALL DEFENDANTS, WITH PREJUDICE**

8.     In the Motion, Defendants argued the Complaint does not allege the basic elements of a breach of contract claim:

- <u>Existence of Contract</u>. The Complaint does not recite facts from which it may be inferred the alleged "April 2009" (month/year the alleged transfers commenced) contract existed.  (Motion ¶45.)

- <u>Adequate Performance by Debtors</u>. The Complaint does not state the Debtors performed under the alleged contract.  Rather, it states funds were transferred from a nondebtor's IOLA account to/for Defendants' benefit.  (Motion ¶46.)  The Complaint states this IOLA account included comingled Debtor and nondebtor funds, and does not explain how any of the alleged transfers are traceable to Debtor funds, as opposed to Defendants' funds.  (Complaint ¶26; Motion ¶48.)

- <u>Breach</u>. The Complaint does not state how the contract was breached, as it does not describe any terms governing repayment (*i.e.*, maturity date).  (Motion ¶47.)

- <u>Damages</u>. As noted above, the Complaint does not recite facts from which it can be inferred the alleged $594,796 in IOLA account funds transferred to/for Defendants' benefit are actually traceable to Debtor funds.

9.     In response, the Trustee argues he adequately pled the existence of the contract described in Complaint ¶24[1] for two reasons.  First, the Complaint provides that allegations therein are "based upon information and belief (acquired from … records of the Debtors … and documents and information obtained from other sources").  (Opp. 7.)  Second, a contract may be inferred from the two charts in the Complaint which specify dates/amounts of alleged transfers from the IOLA account.   (Opp. 8 (citing Complaint ¶¶25-26.))  In addition, the Trustee states he adequately pled breach because the Complaint states that under the contract the Defendants were required to

---

[1] Complaint ¶24 states "In or about April, 2009, the Defendants and the Debtors entered into an agreement whereby: (i) the Debtors agreed to make payments directly to [or] on behalf of the Defendants … and (ii) the Defendants would reimburse the Debtors."  *See also id*. at ¶45 ("In or about April, 2009, the Debtors and the Defendants entered into the Agreement").

reimburse the Debtors for the transfers at issue and did not do so. (*Id.* (citing Complaint ¶¶24, 27.))

10.      The foregoing arguments, addressed below, are meritless.

**A.      The Complaint Does Not Recite the Basis for the Trustee's Belief a Contract Exists**

11.      That the Trustee states he relied on the Debtors' records (and "other" records) in making allegations in the Complaint does not insulate the Trustee's breach of contract claim from dismissal (failure to rely on such records would constitute a Rule 9011(b) violation). As noted in the Motion (¶¶22, 45), because the Complaint pleads facts on information and belief, it must recite the basis for said belief to survive dismissal. *See Munoz-Nagel v. Guess, Inc.*, No. 12-cv-1312, 2013 WL 1809772, at *3 (S.D.N.Y. April 30, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) and *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006)) ("Though a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible' … such allegations must be 'accompanied by a statement of the facts upon which the belief is founded'"); *Fillmore East BS Fin. Subsidiary LLC v. Capmark Bank*, 552 Fed. Appx. 13, 17 (2d Cir. 2014) ("The complaint alleges only in conclusory fashion … breach [of contract]. The allegations here are not 'based on factual information that makes the inference of culpability plausible.' *Arista Records* … 604 F.3d [at] 120 … Rather, as in *Twombly* … 'the conclusory allegation on information and belief that the observed conduct was the product of [culpable conduct is] insufficient to make the claim plausible'"); *Williams v. Calderoni*, No. 11-cv-3020, 2012 WL 69183, at *7 (S.D.N.Y. Mar. 1, 2012) (finding pleadings based on information and belief insufficient where plaintiff pointed to no information that would render his statements anything more than speculative claims/conclusory assertions).

5

12.     Neither the Complaint nor Opp. allege a written agreement exists, suggesting the contract is oral or implied-in-fact.   In either event, however, the Complaint cannot survive dismissal because it does not recite facts from which an enforceable contract may be inferred.

13.     <u>Oral Contract</u>.  The Complaint fails to recite facts supporting the existence of an oral agreement, instead summarily concluding a valid contract exists.    This is insufficient to survive a motion to dismiss.  *See*, *e.g.*, *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) ("A claim that fails to allege facts sufficient to show that an enforceable [oral] contract existed between the parties is subject to dismissal"); *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03-cv-1537, 2003 WL 23018888, at *4-5 (S.D.N.Y. Dec. 22, 2003) (dismissing breach of oral contract claim where insufficient facts were alleged to show agreement existed); *Posner v. Minn. Mining & Mfg. Co.*, 713 F. Supp. 562, 563 (E.D.N.Y. 1989) (dismissing breach of oral contract claim where "[a]lthough the existence of a contract is alleged, plaintiffs fail to set forth any specific information as to when the agreement was made, the terms of the agreement … or any other evidence supporting the formation of the agreement"); *Window Headquarters, Inc. v. MAI Basic Four, Inc.*, No. 91-cv-1816, 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993) (dismissing breach of contract claim where plaintiff alleged only that the relevant lenders "agreed to advance funds" and failed to plead the contract's terms).

14.     <u>Implied-in-Fact Contract</u>.  The Complaint also fails to allege facts supporting the existence of an implied-in-fact contract.  "An implied-in-fact contract arises 'when the agreement and promise have simply not been expressed in words,' but 'a court may justifiably infer that the promise would have been explicitly made, had attention been drawn to it' … An implied-in-fact contract 'requires such elements as consideration, mutual assent, legal capacity and legal subject matter.'"  *Nadel v. Play-by-Play Toys & Novelties, Inc.*, 208 F.3d 368, 376 n.5 (2d Cir. 2000)

6

(quoting *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 93-94 (1999)).  *See also Nat'l Gear and Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 359 (S.D.N.Y. 2012) ("even an implied-in-fact contract must be 'reasonably certain in its material terms'").  The Complaint does not recite facts from which an implied-in-fact contract can be inferred.  *Cf. Leibowitz v. Cornell Univ.*, 445 F.3d 586, 593 (2d Cir. 2006).  ("Leibowitz's complaint with respect to the implied-in-fact contract cannot survive Cornell's motion to dismiss because she does not allege … mutual assent of any intent on the part of Cornell to enter into a contractual arrangement with her"); *San Lan v. Time Warner, Inc.*, No. 11-cv-2870, 2013 WL 1703584, at *5 (S.D.N.Y. April 19, 2013) ("when a plaintiff cannot point to 'sufficient specific, concrete, factual representations such that they could be interpreted to supply the terms of an implied contract,' she has failed to state a cause of action").

15.    The Charts.   The Trustee's argument a contract may be inferred from the charts in Complaint ¶¶25-26 (Opp. 7-8) is plainly incorrect.  The charts merely list dates/amounts of funds allegedly transferred to Leibovitz Studio, Inc. and dates/amounts/recipients of other funds allegedly transferred to third parties for Defendants' benefit (without explaining how the Trustee concluded such transfers were for Defendants' benefit).  The Complaint acknowledges the funds were drawn from a nondebtor's IOLA account, and that the vast majority of the transfers are traceable to nondebtor funds.  Neither the Complaint nor Opp. explains how it can be inferred a contract exists from the Trustee's allegation roughly 20% of the amounts allegedly transferred to/for Defendants' benefit are traceable to Debtor funds.

**B.    The Complaint Does Not Allege Breach**

16.    The Trustee has not adequately pled breach of the alleged contract.  While the Complaint states Defendants were required to reimburse Debtors for transfers made to/for Defendants' benefit (¶24) and that Debtors failed to pay back $594,796 of such transfers the Trustee alleges are traceable to Debtor funds (¶27), one cannot infer Defendants actually breached

the contract because the Complaint does not include any detail concerning the <u>timing</u> of Defendants' alleged repayment obligations (*i.e.*, maturity date).  The Trustee has no response to the body of case law cited in the Motion (¶47) standing for the proposition vague allegations of breach are insufficient to state a claim.

### C.      Adequate Performance by the Debtors; Damages

17.      Defendants described the manner in which the Trustee failed to plead adequate performance by the Debtors (Motion ¶46) and damages (*id*. at ¶48) (<u>half</u> of the elements of the Trustee's breach of contract claim) and will not repeat the same herein.  The Trustee did not respond to any of these arguments in his Opp.  Accordingly, his breach of contract claim should be dismissed.

### D.      Statute of Frauds

18.      In the Motion, Defendants argued the contract, as pled, falls within the Statute of Frauds because it is an "agreement, promise or undertaking" by each Defendant "to answer for the debt, default or miscarriage of" each other Defendant, within the meaning of the statute.  (Motion ¶49.)  *See* Complaint ¶24 (quoted above).  In response, the Trustee argues the Statute of Frauds is inapplicable because the alleged contract is "an agreement by Defendants to repay … the debts of Defendants themselves."  (Opp. 8.)  This position ignores the fact that each Defendant is a separate legal person/entity, and cannot be treated as a single person/entity absent facts supporting a separate claim the veil should be pierced across all Defendants.   The Trustee has pled no such facts.   Accordingly, this claim must be dismissed.  *See*, *e.g.*, *Bagel Bros. Maple, Inc. v. Ohio Farmers, Inc.*, 279 B.R. 55, 68 (W.D.N.Y. 2002) (reversing decision allowing claim against debtor premised on unwritten guarantee of affiliates' debts "without considering the well-recognized rules for piercing the corporate veil, and when it summarily rejected [the] argument that the claim was barred by the Statute of Frauds").

8

## II.    THE QUANTUM MERUIT CLAIM MUST BE DISMISSED AS AGAINST ALL DEFENDANTS, WITH PREJUDICE

### A.    The Quantum Meruit Claim Must be Dismissed

19.    In the Motion, Defendants argued the Trustee's quantum meruit claim must be dismissed because the Complaint does not adequately allege the elements of such claim (performance of services in good faith, acceptance of services, expectation of compensation, and reasonable value of services).

20.    In response, the Trustee asserts the following statements in the Complaint satisfy these elements:

- <u>Performance of Services in Good Faith</u>. From December 2008-April 2010, "the Debtors provided professional services to the Defendants, including tax preparation services, investment advisory services and other financial-related services." (Complaint ¶19.)

- <u>Acceptance of Services</u>. "Defendants accepted and benefitted from the Professional Services provided by the Debtors without objection." (Complaint ¶41.)

- <u>Expectation of Compensation</u>. "[T]he Debtors had a reasonable expectation that they would be compensated for performing the Professional Services." (Complaint ¶42.)

- <u>Services' Value</u>. "[T]he … amount of $440,306.89 is the reasonable value of the Professional Services." (Complaint ¶43.)

21.    These conclusory statements are insufficient to state a quantum meruit claim. Under New York law, to survive a motion to dismiss, a plaintiff asserting a quantum merit claim must actually document the services rendered <u>and</u> establish their value. *See, e.g.*, *DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp.2d 497, 535 (E.D.N.Y. 2011) (granting motion to dismiss quantum meruit claim "because plaintiffs have set forth no more than vague and conclusory allegations regarding what services they provided to defendants or what the reasonable value for these services was"); *Singerman v. Reyes*, 240 A.D.2d 335, 336 (1st Dep't 1997) (same); *Leibowitz v. Cornell Univ.*, No. 03-cv-9976, 2005 WL 267560, at *7 (S.D.N.Y. Feb. 3, 2005)

(dismissing quantum meruit claim where plaintiff did not allege specific services provided or that recipient solicited or agreed to pay for services), *aff'd as to dismissal of quantum meruit claim*, 445 F.3d at 592-93.

22.    Moreover, although the Complaint is pled on information and belief acquired from the Debtors' records, nowhere does the Trustee state how he formed his belief (a) legitimate professional services were actually provided <u>to the Debtors</u> (much less in good faith), given that footnote 2 only states the Trustee's account determined "significant services were performed by the Debtors <u>for the benefit of certain of their clients</u>;" (b) any such services were actually accepted by the Debtors, as opposed to by StarCo without authorization to do so; (c) of any advance discussion concerning Debtors' compensation expectations, or (d) of such services' value.

23.    In addition, as noted above the Complaint nowhere alleges the invoices at issue were unpaid.  "The Trustee's position that the Defendants owe the Debtors' estate" the aggregate amount of the invoices (Motion ¶21) is insufficient.

**B.    At the Very least, the Quantum Meruit Claim Must be Dismissed as Against the Corporate Defendants**

24.    In the Motion, Defendants argued that at a minimum, the Trustee's professional services claims (including the quantum meruit claim) must be dismissed as against all Defendants other than Ms. Leibovitz because the invoices are addressed only to her.  (Motion ¶42.)  In response, the Trustee argues his professional services claims against the corporate Defendants should survive dismissal because the <u>Complaint</u> states services were rendered to them.  (Opp. 2 n.2.)  However, not once does the Trustee recite the basis for his belief services were rendered to Defendants: as noted above, footnote 2 only states the Trustee's accountant determined legitimate services were provided "to certain of the Debtors' clients," not the corporate Defendants, and of course, the invoices are not directed to the corporate Defendants.

10

### III.    THE TRUSTEE SHOULD NOT BE GRANTED LEAVE TO AMEND TO RECAST HIS ACCOUNT STATED CLAIM AS A BREACH OF CONTRACT CLAIM

25.    The Trustee states he "does not oppose Defendants' motion to dismiss his claim for account stated," but requests leave to amend to recast his account stated claim as a breach of contract claim, "as [he] did in the Keith Barish adversary proceeding."  (Opp. 4.)  This request should be denied.

26.    Whether a plaintiff may amend its complaint is governed by Federal Rule of Civil Procedure 15(a), made applicable by Federal Rule of Bankruptcy Procedure 7015.  The Trustee is no longer entitled to amend his Complaint as a matter of course, and therefore needs Defendants' consent or leave of this Court to do so.

27.    Pursuant to Rule 15(a)(2), "permission to amend is not to be given automatically but is allowed only 'when justice so requires.'"  Charles A. Wright & Arthur R. Miller, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.) (quoting Rule 15(a)(2)).

28.    Denial of a motion for leave to amend is justified for reasons of "futility [of the amendment], bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  *See also AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (same).  These reasons support denial of Trustee's procedurally improper request for leave to amend.

29.    <u>Futility</u>.  Granting leave to amend is "futile" if a revised claim "could not withstand a motion to dismiss."  *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).  The Trustee's amendment would be futile for several reasons.

(a)    <u>Amended Complaint Still Would Not Recite a Breach of Contract Claim</u>. The amended Barish complaint does not recite a breach of contract claim upon which recovery can be premised.  Instead, it merely states:

11

- Barish and StarCo had an agreement pursuant to which Barish agreed to pay a monthly fee that matched the amount of the monthly invoices attached to the Complaint, plus expenses, in exchange for StarCo's performance of professional services. (Barish Complaint ¶¶14, 21.)

- StarCo performed professional services for Barish. (*Id*. at ¶¶15, 22.)

- StarCo invoiced Barish monthly. (*Id*. at ¶¶16, 23.)

- Barish refused to pay the invoices. (*Id*. at ¶¶17-19, 24-25.)

A Complaint amended in the same manner as the Barish complaint would not survive a motion to dismiss because it would not recite the basis for the Trustee's belief the basic elements of a breach of contract claim are satisfied:

- Contract Existence. Nowhere in the Opp. (or amended Barish complaint) does the Trustee recite facts from which a written, oral, or implied-in-fact professional services contract may be inferred. The invoices are an insufficient basis for asserting a contract exists because mutual assent cannot be inferred from them. The Trustee's stated case against Defendants is even less plausible than that against Barish because the Trustee alleged the existence of "three written agreements" with Barish based on Rule 2004 discovery (¶14), but has not alleged the existence of any written agreement with any Defendant in his Opp.

- Adequate Performance by Debtors. Nowhere in the Opp. (or amended Barish complaint) does the Trustee recite facts from which the Debtors' performance of professional services for Defendants can be inferred. As noted above, footnote 2 only asserts the Trustee's accountant found services were performed for certain of the Debtors' clients, not Defendants. Moreover, the invoices are addressed only to Ms. Leibovitz, not the corporate Defendants.

    (b)    The Trustee Cannot Allege a Contract. The Trustee has not been able to establish a contract upon which a professional services claim can be premised. The Trustee was appointed July 12, 2011 [Docket No. 34] and had over four years to investigate/discover such contract. If the best the Trustee could come up with after four years is a (defective) account stated claim and quantum meruit claim, his position he has a valid breach of contract claim, formulated six months after the Motion was filed and four months after this Court dismissed the account stated claim against Barish, is not credible or plausible.

12

(c)    <u>Statute of Frauds Precludes Oral/Implied-in-Fact Breach of Contract Claim</u>
<u>against Corporate Defendants</u>.  As the invoices are addressed to Ms. Leibovitz, as primary obligor,
any conceivable breach of contract claim against the corporate Defendants, as presumed
guarantors, must be premised upon a written agreement under the Statute of Frauds, which the
Trustee has not alleged in the amended Barish complaint or the Opp.  *See also* ¶18, *supra*.

30.    <u>Bad Faith/Dilatory Tactics</u>.  As noted above, the Complaint asserts three separate
counts in support of his professional services claim.  Two were so devoid of merit the Trustee
voluntarily withdrew them before the Motion was even heard (account stated and turnover).  The
Trustee's "throw it and see what sticks" approach should not be countenanced.  Now that his only
surviving professional services claim is a quantum meruit claim, which is necessarily inconsistent
with the breach of contract claim the Trustee seeks to add to his Complaint, and which this Court
acknowledged to be weak, at best,[2] the Trustee should not be allowed to suddenly switch gears
and "back into" a breach of contract claim using invoices which were insufficient to support quasi-
contract recovery theories.

---

[2] See Adv. Pro. No. 15-1100, July 1, 2015 Hr'g Tr. [Court] at 21:25-22:5 (Bankr. S.D.N.Y.) [Docket No. 13] (stating, with regard to quantum meruit claim, "[i]t's going to be very hard for you, I suspect, to prove who did what when for this entity that you kind of have taken over as trustee").

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed, with prejudice.

Dated: November 3, 2015                           STORCH AMINI & MUNVES PC
       New York, New York

                                        By: <u>/s/ Jeffrey Chubak</u>

                                        Bijan Amini
                                        Avery Samet
                                        Jeffrey Chubak
                                        2 Grand Central Tower, 25th Floor
                                        140 East 45th Street
                                        New York, New York 10017
                                        (212) 490-4100

                                        *Attorneys for Defendants*

# EXHIBIT A

**(Barish Amended Complaint)**

**TARTER KRINSKY & DROGIN LLP**
*Substitute Special Litigation Counsel to*
*the Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(Tel) 212.216.8000
(Fax) 212.216.8001
Robert A. Wolf, Esq.
Gregory J. Skiff, Esq.
rwolf@tarterkrinsky.com
gskiff@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                      :    Case No. 11-10219 (MEW)
                                                            :
**KENNETH IRA STARR**, *et al.*,                            :    **Chapter 7**
                                                            :
                                                            :    **Jointly Administered**
                                                            :    **Substantively Consolidated**
                              Debtors.[1]                   :
-------------------------------------------------------------x
**ROBERT L. GELTZER**, AS CHAPTER 7                         :
**TRUSTEE OF KENNETH IRA STARR,**                           :
**STARR & COMPANY, LLC, AND STARR**                         :
**INVESTMENT ADVISORS, LLC,**                               :
                                                            :    **Adv. Pro. No.  15-01100-mew**
                              Plaintiff,                    :
                                                            :
             v.                                             :
                                                            :
**KEITH BARISH,**                                           :
                                                            :    **FIRST AMENDED COMPLAINT**
                              Defendant.                    :
                                                            :
                                                            :
-------------------------------------------------------------x

---

[1]    The Debtors in these cases and the case number assigned to each of the Debtors are as follows:  Kenneth Ira Starr (11-10219 (ALG)); Starr & Company, LLC (11-10637 (ALG)); and Starr Investment Advisors, LLC (11-10639 (ALG)).

{Client/007357/BANK828/00966773.DOCX;3 }

Robert L. Geltzer, Esq., as Chapter 7 trustee (the "**Trustee**" or "**Plaintiff**") of Kenneth

Ira Starr ("**Starr**"), Starr & Company, LLC ("**S&C**"), and Starr Investment Advisors, LLC

("**SIA**," and together with Starr and S&C, the "**Debtors**"), and as Trustee, the Plaintiff in this

adversary proceeding, by and through his attorneys, Tarter Krinsky & Drogin LLP, as and for his

First Amended Complaint against defendant Keith Barish ("**Barish**" or "**Defendant**"), alleges as

follows based upon information and belief (acquired from, among other things, available internal

corporate documents and records of the Debtors,[2] documents and information obtained from

other sources, and other publicly available documents):

## PARTIES

1.      Plaintiff is the duly appointed Chapter 7 Trustee for the Debtors.  The Trustee is a

resident of the State of New York and is a licensed New York attorney maintaining an office at

1556 Third Avenue, Suite 505, New York, New York 10128.

2.      Defendant Barish was and is an individual whose last known address is 4810

North Bay Road, Miami Beach, Florida 33140.

---

[2]      The Trustee's Court-appointed Accountant's due diligence review of the Debtors' books and
records revealed, in part, that significant services were performed by the Debtors for the benefit of certain
of their clients.  Over the course of many years, it was found that the Debtors billed those clients for those
services performed:  (a) on an hourly basis, or (b) by monthly retainer, or (c) on a transactional basis (*i.e.*,
deal by deal, % of income, etc.).  The Trustee's Accountant also reviewed client account histories and
cash receipts journals in order to determine if the amounts claimed to be due and owing from clients,
including the Defendant, might be in need of adjustment, based on the Debtors' records, and made such
adjustments, if required, in order to obtain corrected balances due from clients, including the Defendant.
Although the Trustee's Accountant made every reasonable effort to determine the appropriate dollar
amounts, it is possible that additional relevant documents were neither in the Debtors' possession nor
readily obtainable by the Trustee or his Accountant.  If such documents exist, they might affect the
amounts being sought herein.  Similarly, it may be possible that situations, either undocumented or
otherwise unknown to the Trustee, may exist which, in turn, would result in upwards or downwards
adjustments of certain of the amounts being sought herein (*e.g.*, unissued credits, agreed upon discounts,
etc.).  Absent these unknowns, the Trustee's Accountant believes that the amounts being sought herein are
a reasonable reflection of the amounts owed by the Defendant to the Debtors' estate.

## JURISDICTION AND VENUE

3.      The United States District Court for the Southern District of New York (the "**District Court**") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334.  By virtue of 28 U.S.C. § 157(a), and the Amended Standing Order of Reference, dated January 31, 2012, of Chief Judge Loretta A. Preska of the District Court, this adversary proceeding is automatically referred to the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

4.      This adversary proceeding is a core proceeding under, among other things, 28 U.S.C. § 157(b)(2)(A), E), and (O).  Because this is a core proceeding, the Bankruptcy Court has jurisdiction and power under 28 U.S.C. § 157(b) to hear and determine this adversary proceeding.  The Plaintiff consents to the entry of final orders or judgments by the Court if it is determined that this Court, absent consent of the parties herein, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5.      This adversary proceeding is commenced pursuant to the United States Bankruptcy Code (the "**Bankruptcy Code**") §§ 101, 105(a), 541, and 542; the general equity powers of the Bankruptcy Court; and the general common law of the State of New York; and it is also commenced pursuant to Federal Rules of Bankruptcy Procedure 6009, 7001, and 7008 to recover money or property belonging to the Debtors' estate.

6.      Venue of the subject Chapter 7 case and of this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

A. **Background**

7.    The Debtors managed the financial and related personal affairs of, and served as an investment advisor for, numerous clients.

8.    On or about May 26, 2010, the United States Securities and Exchange Commission (the "**SEC**") commenced a civil enforcement proceeding in the District Court against Starr, S&C and SIA, Case No. 10-CIV-4270 (SHS) (the "**SEC Proceeding**").

9.    Aurora Cassirer, Esq. was appointed in the SEC Proceeding as the temporary, and then the permanent, receiver (the "**Receiver**") for S&C and SIA.

10.    On January 7, 2011, an involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against Starr in the Bankruptcy Court by the Estate of Joan Stanton and JAS Ventures, L.P.  The Bankruptcy Court entered an order for relief on July 12, 2011, and shortly thereafter, the Trustee was appointed as the interim Chapter 7 trustee of Starr, and subsequently became permanent Trustee of Starr pursuant to Section 702(d) of the Bankruptcy Code and by operation of law.

11.    On February 17, 2011 (the "**Petition Date**"), the Receiver filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court on behalf of S&C and SIA.

12.    On December 8, 2011, upon a motion by the Trustee, the Bankruptcy Court entered an order (the "**Consolidation Order**") substantively consolidating the estates of Starr, S&C and SIA into a single Chapter 7 estate.

13.    On December 27, 2011, the Trustee was appointed as successor trustee for both S&C and SIA, and continues to serve as Trustee of the Debtors' substantively consolidated chapter 7 estate.

### B.  Professional Services Rendered to and on Behalf of the Defendants

14.    As Defendant testified at his Court-ordered examination, conducted in the Debtors' cases on behalf of the Trustee pursuant to Federal Rule of Bankruptcy Procedure 2004 on February 1, 2013, during the period in or about 1996 through 1999, Defendant and S&C entered into as many as three written agreements (collectively, the "**Agreement**") pursuant to which Defendant agreed to make monthly payments to S&C each month in the fee amount of $50,000 (which fee amount was subsequently reduced by agreement to $20,000 per month), plus expenses, for S&C's performance of various professional services on behalf of Defendant (the "**Professional Services**"), which services included bookkeeping, making payments to Defendant's creditors, making financial investments, issuing and signing checks, tax preparation services on behalf of Defendant and entities in which Defendant had an ownership interest, preparation of periodic financial statements, negotiations with taxing authorities to resolve Defendant's alleged tax liabilities, negotiations with certain banks regarding Defendant's alleged liabilities on various loans, consulting and advisory services, and other financial-related services.

15.    Pursuant to the Agreement, during the period December 2008 and continuing through in or about April 2010, S&C performed such Professional Services on behalf of Defendant.

16.    During the period commencing in January 2009 and ending in May 2010, S&C provided Defendant with monthly statements of account which reflected the outstanding fees and

expenses due from Defendant in connection with the Professional Services rendered by S&C

during the months of December 2008 through and including April 2010.  Annexed hereto as

Exhibit "A" are copies of certain of those statements of account. [3]

      17.     On or about September 9, 2013 the Trustee wrote to the Defendant demanding

payment of the amount of $1,582,170.29, which was then believed to be the amount owed by the

Defendant for the Professional Services rendered by S&C to Defendant.  Upon further analysis

of the Debtors' books and records (see note 2, supra) and consideration of the applicable statute

of limitations, it is the Trustee's position that the Defendant presently owes the Debtors' estate

the amount of $341,641.29 for the Professional Services rendered during the period December

2008 through in or about April 2010 (the "**Account Receivable**").

      18.     By letter dated September 24, 2013, the Defendant's then attorney responded to

the Trustee's September 9, 2013 letter by asserting that the Defendant did not owe any amount to

the Debtors' estate, but the Trustee was not provided with documentation to support such

assertion.

      19.     To date, the Defendant has failed and refused to make any payment to the Trustee,

and thus there remains due and owing from the Defendant the total Account Receivable of

$341,641.29.

---

[3]     To date, the Trustee and his professionals have been unable to locate monthly statements of account that would have been sent to Defendant in the months of April 2009, January 2010 and February 2010 for Professional Services rendered during the months of March 2009, December 2009 and January 2010, respectively. Accordingly, the total amount of the Account Receivable (defined infra) of $341,641.29 includes amounts for Professional Services rendered during the aforesaid months of March 2009, December 2009  and January 2010, totaling $60,051.39, for which no monthly statements of account have been located, but which are reflected on S&C's "Sales Analysis By Customer Report 01/01/09 To 03/01/10," annexed hereto as Exhibit "B."

## COUNT ONE
### (Breach of Contract)

20.     The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this First Amended Complaint as if fully set forth herein.

21.     The Agreement constitutes a valid and binding contract between the parties.

22.     S&C performed all of its obligations under the Agreement, which included the rendering of the Professional Services on behalf of Defendant during the period December 2008 through April 2010 (the "**Subject Period**").

23.     In accordance with the Agreement, from in or about January 2009 through and including May 2010, S&C provided Defendant with monthly statements of account which reflected a fee amount of $20,000 per month plus certain expenses due from Defendant to S&C for the fees and expenses incurred by S&C on behalf of Defendant in rendering the aforesaid Professional Services during the Subject Period.

24.     Defendant, however, has failed and refused to pay S&C and/or the Trustee, despite due demand therefor, for fees and expenses incurred in connection with the Professional Services rendered by S&C on behalf of Defendant during the Subject Period in the total amount of $341,641.29.

25.     Defendant has breached its obligations to S&C under the Agreement by, *inter alia*, failing to pay S&C and/or the Trustee for the Professional Services in the amount of $341,641.29.

26.     As a result of Defendant's breach of the Agreement, the Defendant is liable to the Trustee in the amount of $341,641.29, plus interest and costs.

## COUNT TWO
### (*Quantum Meruit*)

27.     The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this First Amended Complaint as if fully set forth herein.

28.     Commencing in or about December 2008 through and including in or about April 2010, S&C performed the Professional Services for the benefit of the Defendant in good faith.

29.     Defendant accepted and benefited from the Professional Services provided by S&C without objection.

30.     As evidenced by the monthly statements of account provided to Defendant by S&C and the "Sales Analysis By Customer Report 01/01/09 To 03/01/10," S&C had a reasonable expectation that it would be compensated for performing the Professional Services to Defendant.

31.     The aforesaid amount of $341,641.29 is the reasonable value of the Professional Services rendered by S&C to Defendant.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**WHEREFORE**, the Trustee requests that this Court enter judgment in favor of the Trustee as follows:

A.    On Count One, against the Defendant, in the amount of $341,641.29, plus interest and costs;

B.    On Count Two, against the Defendant, in the amount of $341,641.29, plus interest and costs;

C.    Awarding the Trustee's reasonable attorneys' fees and costs; and

D.    Granting such other and further relief as the Court deems just and proper.


Dated: New York, New York                    **TARTER KRINSKY & DROGIN LLP**
       July 20, 2015                              *Special Litigation Counsel to the*
                                                  *Chapter 7 Trustee*


                                         By:  _____s/ Robert A. Wolf_____
                                                Robert A. Wolf, Esq.
                                                Gregory J. Skiff, Esq.
                                                  1350 Broadway, 11th Floor
                                                New York, New York 10018
                                                (Tel) 212.216.8000
                                              rwolf@tarterkirnsky.com
                                              gskiff@tarterkrinsky.com

## CERTIFICATE OF SERVICE

I certify on November 3, 2015, I caused the foregoing *Defendants' Reply in Support of Motion to Dismiss* to be served via ECF, e-mail, and first class mail on plaintiff Robert L. Geltzer's attorneys at the following address:

> Robert A. Wolf
> Gregory J. Skiff
> Tarter Krinsky & Drogin LLP
> 1350 Broadway, 11th Floor
> New York, New York 10018
> rwolf@tarterkrinsky.com
> gskiff@tarterkrinsky.com

Dated: November 3, 2015        STORCH AMINI & MUNVES PC
       New York, New York


                               By: /s/ Jeffrey Chubak

                               Jeffrey Chubak
                               2 Grand Central Tower, 25th Floor
                               140 East 45th Street
                               New York, New York 10017
                               (212) 490-4100

                               *Attorneys for Defendants*