**TARTER KRINSKY & DROGIN LLP**
*Substitute Special Litigation Counsel to*
*the Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(Tel) 212.216.8000
(Fax) 212.216.8001
Robert A. Wolf, Esq.
Gregory J. Skiff, Esq.
rwolf@tarterkrinsky.com
gskiff@tarterkrinsky.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------x
In re:                                       :   Case No. 11-10219 (MEW)
                                             :
KENNETH IRA STARR, et al.,                   :   Chapter 7
                                             :
                                             :   Jointly Administered
                             Debtors.¹       :   Substantively Consolidated
------------------------------------------------------x
ROBERT L. GELTZER, AS CHAPTER 7              :
TRUSTEE OF KENNETH IRA STARR,               :
STARR & COMPANY, LLC, AND STARR             :
INVESTMENT ADVISORS, LLC,                   :
                                             :   Adv. Pro. No. 14-02446 (MEW)
                             Plaintiff,      :
                                             :
        v.                                   :
                                             :
ANNALOU LEIBOVITZ a/k/a                      :   FIRST AMENDED COMPLAINT
ANNIE LEIBOVITZ,                            :
LEIBOVITZ STUDIO, INC.,                      :
305-307 WEST 11TH STREET LLC, and           :
311 WEST 11TH STREET LLC,                    :
                                             :
                             Defendants.     :
------------------------------------------------------x
```

Robert L. Geltzer, Esq., as Chapter 7 trustee (the "**Trustee**" or "**Plaintiff**") of Kenneth

Ira Starr ("**Starr**"), Starr & Company, LLC ("**S&C**"), and Starr Investment Advisors, LLC

---

¹  The Debtors in these cases and the case number assigned to each of the Debtors are as follows:
Kenneth Ira Starr (11-10219 (MEW)); Starr & Company, LLC (11-10637 (MEW)); and Starr Investment
Advisors, LLC (11-10639 (MEW)).

("**SIA**," and together with Starr and S&C, the "**Debtors**"), and as Trustee, the Plaintiff in this adversary proceeding, by and through his attorneys, Tarter Krinsky & Drogin LLP, as and for his First Amended Complaint against defendants Annalou Leibovitz a/k/a Annie Leibovitz ("**Leibovitz**"), Leibovitz Studio, Inc. ("**Leibovitz Studio**"), 305-307 West 11th Street LLC ("**305-307 LLC**"), 311 West 11th Street LLC ("**311 LLC**," together with Leibovitz Studio and 305-307 LLC, the "**Companies**"; the Companies, together with Leibovitz, the "**Defendants**"), alleges as follows based upon information and belief (acquired from, among other things, available internal corporate documents and records of the Debtors,[2] documents and information obtained from other sources, and other publicly available documents):

## PARTIES

1.      Plaintiff is the duly appointed Chapter 7 Trustee for the Debtors.  The Trustee is a resident of the State of New York and is a licensed New York attorney maintaining an office at 1556 Third Avenue, Suite 505, New York, New York 10128.

2.      Defendant Leibovitz was and is an individual whose last known address is 755 Greenwich Street, New York, New York 10014.

---

[2]      The Trustee's Court-appointed Accountant's due diligence review of the Debtors' books and records revealed, in part, that significant services were performed by the Debtors for the benefit of certain of their clients.  Over the course of many years, it was found that the Debtors billed those clients for those services performed: (a) on an hourly basis, or (b) by monthly retainer, or (c) on a transactional basis (*i.e.*, deal by deal, % of income, etc.).  The Trustee's Accountant also reviewed client account histories and cash receipts journals in order to determine if the amounts claimed to be due and owing from clients, including the Defendants, might be in need of adjustment, based on the Debtors' records, and made such adjustments, if required, in order to obtain corrected balances due from clients, including the Defendants. Although the Trustee's Accountant made every reasonable effort to determine the appropriate dollar amounts, it is possible that additional relevant documents were neither in the Debtors' possession nor readily obtainable by the Trustee or his Accountant.  If such documents exist, they might affect the amounts being sought herein.  Similarly, it may be possible that situations, either undocumented or otherwise unknown to the Trustee, may exist which, in turn, would result in upwards or downwards adjustments of certain of the amounts being sought herein (*e.g.*, unissued credits, agreed upon discounts, etc.).  Absent these unknowns, the Trustee's Accountant believes that the amounts being sought herein are a reasonable reflection of the amounts owed by the Defendants to the Debtors' estate.

3.      Defendant Leibovitz Studio, of which Leibovitz is the sole or majority shareholder, was and is a corporation duly formed and existing under the laws of the State of New York with a principal place of business located at 405 West 14th Street, New York, New York 10014.

4.      Defendant 305-307 LLC, of which Leibovitz is the sole or majority member, was and is a limited liability company duly formed and existing under the State of Delaware and is registered as a foreign limited liability company under the laws of the State of New York, with a place of business located at 755 Greenwich Street, New York, New York 10014.

5.      Defendant 311 LLC, of which Leibovitz is the sole or majority member, was and is a limited liability company duly formed and existing under the laws of the State of Delaware and is registered as a foreign limited liability company under the laws of the State of New York, with a place of business located at 755 Greenwich Street, New York, New York 10014.

## JURISDICTION AND VENUE

6.      The United States District Court for the Southern District of New York (the "**District Court**") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334.  By virtue of 28 U.S.C. § 157(a), and the Amended Standing Order of Reference, dated January 31, 2012 of Chief Judge Loretta A. Preska of the District Court, this adversary proceeding is automatically referred to the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

7.      This adversary proceeding is a core proceeding under, among other things, 28 U.S.C. § 157(b)(2)(A) and (O).  Because this is a core proceeding, the Bankruptcy Court has jurisdiction and power under 28 U.S.C. § 157(b) to hear and determine this adversary proceeding.  The Plaintiff consents to the entry of final orders or judgments by the Court if it is

determined that this Court, absent consent of the parties herein, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8.      This adversary proceeding is commenced pursuant to the United States Bankruptcy Code (the "**Bankruptcy Code**") §§ 101 and 105(a); the general equity powers of the Bankruptcy Court; and the general common law of the State of New York; and it is also commenced pursuant to Federal Rules of Bankruptcy Procedure 6009, 7001, and 7008 to recover money or property belonging to the Debtors' estate.

9.      Venue of the subject Chapter 7 case and of this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

### A. Background

10.     The Debtors managed the financial and related personal affairs of, and served as an investment advisor for, numerous clients.

11.     On or about May 26, 2010, the United States Securities and Exchange Commission (the "**SEC**") commenced a civil enforcement proceeding in the District Court against Starr, S&C and SIA, Case No. 10-CIV-4270 (SHS) (the "**SEC Proceeding**").

12.     Aurora Cassirer, Esq. was appointed in the SEC Proceeding as the temporary, and then the permanent, receiver (the "**Receiver**") for S&C and SIA.

13.     On January 7, 2011, an involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against Starr in the Bankruptcy Court by the Estate of Joan Stanton and JAS Ventures, L.P.  The Bankruptcy Court entered an order for relief on July 12, 2011, and shortly thereafter, the Trustee was appointed as the interim Chapter 7 trustee of Starr, and

subsequently became permanent Trustee of Starr pursuant to Section 702(d) of the Bankruptcy Code and by operation of law.

14.     On February 17, 2011 (the "**Petition Date**"), the Receiver filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court on behalf of S&C and SIA.

15.     On December 8, 2011, upon a motion by the Trustee, the Bankruptcy Court entered an order (the "**Consolidation Order**") substantively consolidating the estates of Starr, S&C and SIA into a single Chapter 7 estate.

16.     On December 27, 2011, the Trustee was appointed as successor trustee for both S&C and SIA, and continues to serve as Trustee of the Debtors' substantively consolidated chapter 7 estate.

**B.  Professional Services Rendered to and on Behalf of the Defendants**

17.     Commencing no later than 2006, Starr on behalf of S&C and Leibovitz on behalf of her and her Companies entered into an implied agreement whereby S&C would provide professional services to Leibovitz and her Companies, including tax preparation services, financial advisory services and other financial-related services, and in exchange for said services Leibovitz, on behalf of herself and her Companies would pay S&C at least $20,000 per month and reimburse S&C for all expenses paid on behalf of Leibovitz and her Companies (the "**Professional Services Agreement**").

18.     In 2007, upon mutual agreement of the parties said fee of $20,000 per month increased to $25,000 per month.[3]

---

[3]     From time to time upon further mutual agreement of the parties the monthly fee of $25,000 was increased to as high as $50,000 as a result of additional services rendered.

19.    From the inception of the Professional Services Agreement through January 2009, Leibovitz complied with her obligations under the Professional Services Agreement by paying on behalf of herself and her Companies the monthly fees and reimbursement of expenses as described in Paragraphs 17, 18 and 18 n.3 above.

20.    Pursuant to the Professional Services Agreement, during the period December 2008 through April 2010 (the "**17-Month Period**"), the Debtors provided the aforementioned professional services to Leibovitz and/or her Companies, which included, but were not limited to, the following:  dealings with taxing authorities; accounting services; preparation of job cost summaries; preparation of payroll; New York State tax audit preparation and coordination; raising capital and obtaining financing on their behalf; coordinating their payments of expenses; preparation of W2s, 1099s, payroll tax returns and payroll checks; dealings and negotiations with creditors who were attempting to foreclose on various loans made to Leibovitz and/or to any of her Companies; dealings, negotiations and coordination with Leibovitz's and/or any of her Companies' attorneys, various banks' attorneys, and creditors' attorneys; and, financial planning (collectively, the "**Professional Services**").

21.    From the inception of the Professional Services Agreement through May 2010, S&C provided Leibovitz with monthly statements of account, "c/o Starr & Company, LLC", which reflected the outstanding fees and expenses due from Leibovitz and her Companies in connection with the Professional Services rendered by the Debtors pursuant to the Professional Services Agreement.

22.    In furtherance of the Professional Services Agreement, Leibovitz provided the Debtors with authority to prepare checks on her and/or any of her Companies' behalf to be drawn from the funds of Leibovitz and/or her Companies made payable to various of her and/or her

Companies' creditors and/or vendors, including, but not limited to, those made payable to S&C for the Professional Services rendered.  Said checks were prepared on a monthly basis by S&C and were presented to Leibovitz's and/or her Companies' agent(s) and/or employee(s) for authorization.

23.    At all relevant times herein, Leibovitz on behalf of herself and her Companies had authority to act on behalf of herself and her Companies with respect to, among other things, entering into the Professional Services Agreement and Defendants' performance of their obligations under the Professional Services Agreement, which included, but were not limited to, authorizing the preparation of checks prepared by S&C on Leibovitz's and/or her Companies' behalf to be drawn from the funds of Leibovitz and/or her Companies.

24.    As was the case prior thereto, from January 2009 through in or about May 2010, S&C provided Leibovitz with monthly statements of account which reflected the outstanding fees and expenses due from her and/or her Companies in connection with the Professional Services rendered by the Debtors during the 17-Month Period.

25.    On or about September 9, 2013, and again on April 29, 2014, the Trustee wrote to Leibovitz demanding payment of the amount of $465,306.89, which was then believed to be the amount owed by her and her Companies for the Professional Services rendered by the Debtors to them.  Upon further analysis of the Debtors' books and records (see note 2, <u>supra</u>), it is the Trustee's position that Leibovitz and her Companies owe the Debtors' estate the aggregate amount of $440,306.89 for the Professional Services rendered (the "**Account Receivable**").

26.    The Defendants' representative responded to the Trustee's April 29, 2014 letter by asserting that the Defendants did not owe any amount to the Debtors' estate, but the Trustee was not provided with documentation to support such assertion.

27.    To date, Leibovitz, Leibovitz Studio, 305-307 LLC, and 311 LLC have failed and refused to make any payments to the Trustee, and thus there remains due and owing from the Defendants the total Account Receivable of $440,306.89.

### C. The Debtors' Payments to Cover Expenses of the Defendants

28.    In or about April 2009, Leibovitz and the Companies on the one hand, and the Debtors on the other, entered into an implied agreement whereby:  (i) the Debtors agreed to make payments directly to Leibovitz and/or her Companies and/or to third parties on behalf of Leibovitz and/or her Companies, to cover various expenses incurred by and/or on behalf of Leibovitz and/or her Companies; and (ii) Leibovitz and/or her Companies would reimburse the Debtors for all of the aforesaid payments (the "**Expense Transfer Agreement**").

29.    From in or about April 2009 through and including in or about September 2009, by way of funds, including funds of the Debtors, drawn from an IOLA account that was being maintained by the Debtors' then-attorney Jonathan Bristol, Esq. (the "**Bristol IOLA Account**"), a number of monetary transfers in the aggregate amount of $1,292,604 were made to Leibovitz Studio to provide funds to Leibovitz Studio for payment of various expenses incurred by that Company (the "**Leibovitz Studio Transfers**").  Below, is an itemized list of the Leibovitz Studio Transfers made from the Debtors' funds:

| DATE | AMOUNT |
|---|---|
| April 17, 2009 | $75,000 |
| April 21, 2009 | $75,000 |
| May 8, 2009 | $50,000 |
| June 30, 2009 | $192,604 |
| August 17, 2009 | $100,000 |

| | | |
|---|---|---|
| **September 11, 2009** | | $800,000 |
| | **TOTAL:** | **$1,292,604** |

30.     Also, from in or about April 2009 through and including in or about September 2009, by way of funds, including funds of the Debtors, drawn from the Bristol IOLA Account, the following monetary transfers were made to various third parties in payment of various expenses incurred by Leibovitz and/or her Companies:

| DATE | RECIPIENT | ON BEHALF OF | AMOUNT |
|---|---|---|---|
| **April 2, 2009** | NY Commissioner of Tax and Finance | Leibovitz and/or her Companies[4] | $99,308 |
| **April 2, 2009** | Rhinebeck Properties | Leibovitz | $149,236 |
| **April 2, 2009** | JS Reps Corp- JP Morgan 937502193865 | Leibovitz and/or her Companies | $100,000 |
| **April 16, 2009** | Rhinebeck Properties | Leibovitz | $48,770 |
| **May 15, 2009** | 345 Abstract- Fidelity 1197545512 | Leibovitz | $87,456 |
| **October 9, 2009** | Art Capital Group | Leibovitz Studio | $221,637 |
| **June 30, 2009** | Art Capital Group- JP Morgan 967002273 | Leibovitz Studio | $707,396 |
| **August 28, 2009** | Art Capital Group- JP Morgan 967002273 | Leibovitz Studio | $500,000 |
| **September 2009** | Jonathan Podell | Leibovitz Studio | $50,000 |
| | | **SUB-TOTAL:** | **$1,963,803** |
| | | **GRAND TOTAL (INCLUDES** | **$3,256,407** |

---

[4]     To the extent additional information is brought to light in discovery with respect to the specific Defendants who benefited from the within expense transfers, the Trustee reserves his right to amend the instant pleading to reflect same.

| LEIBOVITZ STUDIO TRANSFERS): |
| --- |

Of the above payments in the amount of $1,963,803 and the Leibovitz Studio Transfers in the amount of $1,292,604, which aggregate $3,256,407, $2,500,000 were paid out of funds of Stacy Lloyd (a client of the Debtors), and $200,000 were paid out of funds of Fred Hochburg (also a client of the Debtors) that had been deposited into the Bristol IOLA Account. The balance of the Defendants' expenses paid as aforesaid, in the amount of $594,796.00, were paid from funds of the Debtors that had been deposited into the Bristol IOLA Account (the "**Aggregate Expense Transfers**").

31.     To date, in breach of the Agreement, Leibovitz and/or her Companies have failed to pay back to the Debtors or to the Trustee any portion of the Aggregate Expense Transfers in the aggregate amount of $594,796.00.

## COUNT ONE
### (Breach of Contract)

32.     The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

33.     No later than 2006, S&C and Leibovitz, on her behalf and on behalf of each of her Companies, entered into the Professional Services Agreement.

34.     The Debtors performed their obligations under the Professional Services Agreement by performing Professional Services during the 17-Month Period.

35.     In furtherance of the Professional Services Agreement, the Debtors provided the Defendants with monthly statements of account which reflected the outstanding fees and expenses due from the Defendants in connection with the Professional Services rendered by the Debtors pursuant to the Professional Services Agreement during the 17-Month Period.

36.     Defendants, however, have breached their obligations under the Professional Services Agreement by failing to pay to the Debtors or to the Trustee the sum of $440,306.89, the aggregate fees and expenses owed for Professional Services rendered during the 17-Month Period (*i.e.*, from December 2008 through April 2010), plus interest and costs.

## COUNT TWO
### (*Quantum Meruit*)

37.     The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

38.     Commencing in or about December 2008 through and including in or about April 2010, S&C performed the Professional Services for the benefit of the Defendants in good faith.

39.     The Defendants accepted and benefited from the Professional Services provided by S&C without objection.

40.     As evidenced by the monthly statements of account provided to Leibovitz by S&C, and by the fact that previously during the period 2006 through December 2008 Defendants had paid and/or authorized the payment of S&C's monthly fee for similar services rendered, S&C had a reasonable expectation that it would be compensated for performing the Professional Services during the 17-Month Period.

41.     The aforesaid amount of $440,306.89 is the reasonable value of the Professional Services rendered by S&C during the 17-Month Period.

## COUNT THREE
### (Breach of Contract Against Leibovitz Studio)

42.     The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

43.     The Debtors performed their obligations under the Expense Transfer Agreement by among other things making payment of the Leibovitz Studio Transfers and various expense transfers on behalf of Leibovitz Studio in the aggregate amount of $2,771,637.00.[5]

44.     Leibovitz Studio, however, has breached its obligations under the Expense Transfer Agreement by failing to repay to the Debtors or to the Trustee $506,250.79, which amount represents Leibovitz Studio's Percentage of the $594,796.00 in Aggregate Expense Transfers.

45.     Accordingly, Leibovitz Studio owes the Trustee the amount of $506,250.79, plus interest and costs.

## COUNT FOUR
### (Breach of Contract Against Leibovitz)

46.     The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

47.     The Debtors performed their obligations under the Expense Transfer Agreement by, among other things, making payment of expense transfers on behalf of Leibovitz in the amount of $285,462.[6]

---

[5]     As set forth in Paragraph 30 above, $2,500,000 of the $3,256,407 grand total of expense transfers, which includes, among other transfers, the Leibovitz Studio Transfers and transfers made on behalf of Leibovitz Studio, were paid out of funds of Stacy Lloyd (a client of the Debtors) and $200,000 were paid out of funds of Fred Hochburg (also a client of the Debtors) that had been deposited into the Bristol IOLA Account.  The Leibovitz Studio Transfers and transfers made on behalf of Leibovitz Studio in the amount of $2,771,637.00 make up approximately 85% of the grand total of $3,256,407 in expense transfers ("**Leibovitz Studio's Percentage**").

[6]     As set forth in Paragraph 30 and Footnote 5 above, $2,500,000 of the $3,256,407 grand total of expense transfers, which includes, among other transfers, the transfers made on behalf of Leibovitz, were paid out of funds of Stacy Lloyd (a client of the Debtors) and $200,000 were paid out of funds of Fred Hochburg (also a client of the Debtors) that had been deposited into the Bristol IOLA Account.  The expense transfers on behalf of Leibovitz in the amount of $285,462 make up approximately 9% of the total $3,256,407 expense transfers ("**Leibovitz's Percentage**").

48.    Leibovitz, however, has breached her obligations under the Expense Transfer Agreement by failing to repay to the Debtors or to the Trustee $53,531.64, Leibovitz's Percentage of the Aggregate Expense Transfers in the amount of $594,796.00.

49.    Accordingly, Leibovitz owes the Trustee the amount of $53,531.64, plus interest and costs.

**COUNT FIVE**
**(Breach of Contract Against All Defendants)**

50.    The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

51.    The Debtors performed their obligations under the Expense Transfer Agreement by, among other things, making payment of expense transfers on behalf of Leibovitz and/or her Companies in the amount of $199,308.[7]

52.    Defendants, however, have breached their obligations under the Expense Transfer Agreement by failing to repay to the Debtors or to the Trustee $35,013.57, the Defendants' Percentage of the Aggregate Expense Transfers in the amount of $594,796.00.

53.    Accordingly, Defendants owe the Trustee the amount of $35,013.57, plus interest and costs.

---

[7]    As set forth in Paragraph 30 and Footnotes 5 and 6 above, $2,500,000 of the $3,256,407 grand total of expense transfers were paid out of funds of Stacy Lloyd (a client of the Debtors) and $200,000 were paid out of funds of Fred Hochburg (also a client of the Debtors) that had been deposited into the Bristol IOLA Account.  The expense transfers on behalf of Leibovitz and/or her Companies in the amount of $199,308 make up approximately 6% of the total $3,256,407 expense transfers ("**Defendants' Percentage**").

**WHEREFORE**, the Trustee requests that this Court enter judgment in favor of the Trustee as follows:

A.    On Count One, against the Defendants, jointly and severally, in the amount of $440,306.89, plus interest and costs;

B.    On Count Two, against the Defendants, jointly and severally, in the amount of $440,306.89, plus interest and costs;

C.    On Count Three, against Defendant Leibovitz Studio, in the amount of $506,250.79, plus interest and costs;

D.    On Count Four, against Leibovitz, in the amount of $53,531.64, plus interest and costs;

E.    On Count Five, against the Defendants, jointly and severally, in the amount of $35,013.57, plus interest and costs;

F.    Awarding the Trustee's attorneys' fees and costs; and

G.    Granting such other and further relief as the Court deems just and proper.


Dated: New York, New York
           January 8, 2016

                                             **TARTER KRINSKY & DROGIN LLP**
                                             *Substitute Special Litigation Counsel to the*
                                             *Chapter 7 Trustee*


                                             By:    _____s/ Robert A. Wolf_____
                                                      Robert A. Wolf
                                                      Gregory J. Skiff
                                                      1350 Broadway, 11th Floor
                                                      New York, New York 10018
                                                      (Tel) 212.216.8000
                                                      rwolf@tarterkirnsky.com
                                                      gskiff@tarterkrinsky.com