Hearing Date and Time: April 20, 2016 at 10:00 a.m.
Objection Deadline: April 6, 2016

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 Case No. 11-10219 (MEW) |
| KENNETH IRA STARR, *et al.*, | Jointly Administered |
| Debtors. | Substantively Consolidated |
| ROBERT L. GELTZER, AS CHAPTER 7 TRUSTEE OF KENNETH IRA STARR, STARR & COMPANY, LLC, and STARR INVESTMENT ADVISORS, LLC, | |
| Plaintiff, | |
| - against - | Adv. Pro. No. 14-2446 (MEW) |
| ANNALOU LEIBOVITZ a/k/a ANNIE LEIBOVITZ, LEIBOVITZ STUDIO, INC., 305-307 WEST 11th STREET LLC, and 311 WEST 11th STREET LLC, | |
| Defendants. | |

**NOTICE OF DEFENDANTS' MOTION TO DISMISS**
**COUNTS 3-5 OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

PLEASE TAKE NOTICE a hearing on the attached motion to dismiss will be held before the Hon. Michael E. Wiles in Room 617 of the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, New York, New York 10004, on April 20, 2016 at 10:00 a.m.  Any objection to the motion must be filed with the Court, and served on defendants' undersigned attorneys so as to be received by April 6, 2016, with a courtesy copy delivered to chambers.

Dated: March 16, 2016
        New York, New York

STORCH AMINI & MUNVES PC

/s/ Avery Samet
Bijan Amini
Avery Samet
Jeffrey Chubak
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

*Attorneys for the Defendants*

**Hearing Date and Time: April 20, 2016 at 10:00 a.m.**
**Objection Deadline: April 6, 2016**

Bijan Amini
Avery Samet
Jeffrey Chubak
STORCH AMINI & MUNVES PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

*Attorneys for the Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 Case No. 11-10219 (MEW) |
| KENNETH IRA STARR, *et al.*, | Jointly Administered |
| Debtors. | Substantively Consolidated |
| ROBERT L. GELTZER, AS CHAPTER 7 TRUSTEE OF KENNETH IRA STARR, STARR & COMPANY, LLC, and STARR INVESTMENT ADVISORS, LLC, | |
| Plaintiff, | |
| - against - | Adv. Pro. No. 14-2446 (MEW) |
| ANNALOU LEIBOVITZ a/k/a ANNIE LEIBOVITZ, LEIBOVITZ STUDIO, INC., 305-307 WEST 11th STREET LLC, and 311 WEST 11th STREET LLC, | |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS COUNTS 3-5**
**OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

STATEMENT PURSUANT TO RULE 7012(b) ..................................................................... 3

FACTS ALLEGED IN THE AMENDED COMPLAINT ....................................................... 3

THE LEGAL STANDARD UNDER RULE 12(b)(6) ............................................................. 5

THIS COURT SHOULD DISMISS THE IMPLIED BREACH OF CONTRACT CLAIMS ........ 6

I.    THE AMENDED COMPLAINT IS VIRTUALLY IDENTICAL TO THE
COMPLAINT WHICH THIS COURT ALREADY DISMISSED ..................................... 6

II.   THE AMENDED COMPLAINT FAILS TO PLEAD THE ELEMENTS OF AN
IMPLIED CONTRACT ........................................................................................................ 6

III.  EVEN IF THE TRUSTEE HAD ADEQUATELY PLED AN IMPLIED CONTRACT,
HIS PERCENTAGE OBLIGATION CLAIMS MAKE NO SENSE .................................. 8

CONCLUSION ........................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................5

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................5

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991).......................................................................................................4

*Dickinson v. C.I.R.*,
  T.C. Memo. 2014-136, 2014 WL 3377066 (July 10, 2014) ......................................................7

*Geftman v. C.I.R.*,
  154 F.3d 61 (3d Cir. 1998).......................................................................................................7

*Haag v. C.I.R.*,
  88 T.C. 604, 1987 WL 49288 (1987)........................................................................................7

*In re LightSquared Inc.*,
  504 B.R. 321 (Bankr. S.D.N.Y. 2013)......................................................................................5

*In re Zambrano Corp.*,
  478 B.R. 670 (Bankr. W.D. Pa. 2012)......................................................................................7

*Karns Prime & Fancy Food, Ltd. v. C.I.R.*,
  T.C. Memo. 2005-233, 2005 WL 2464615 (Oct. 5, 2005) .......................................................8

*Lan v. Time Warner, Inc.*,
  No. 11-cv-2870, 2013 WL 1703584 (S.D.N.Y. April 19, 2013)...............................................7

*Leibowitz v. Cornell Univ.*,
  No. 03-cv-9976, 2005 WL 267560 (S.D.N.Y. Feb. 3, 2005) ....................................................6

*Maas v. Cornell Univ.*,
  94 N.Y.2d 87 (1999).............................................................................................................6, 7

*Nadel v. Play-By-Play Toys & Novelties, Inc.*,
  208 F.3d 368 (2d Cir. 2000).....................................................................................................6

*Transcience Corp. v. Big Time Toys, LLC*,
  50 F. Supp.3d 441 (S.D.N.Y. 2014).........................................................................................6

*Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*,
  541 B.R. 172 (Bankr. S.D.N.Y. 2015)......................................................................................5

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 1, 5

Defendants Annalou Leibovitz a/k/a Annie Leibovitz, Leibovitz Studio, Inc. ("Leibovitz Studio"), 305-307 West 11th Street LLC, and 311 West 11th Street LLC (together, "Defendants") hereby move to dismiss Counts 3-5 of the First Amended Complaint (the "Amended Complaint" or "Am. Compl.") of plaintiff Robert L. Geltzer, as chapter 7 trustee (the "Trustee") for the estates of Kenneth Ira Starr, Starr & Company, LLC, and Starr Investment Advisors, LLC (collectively, the "Debtors"), pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this motion, Defendants state:

## INTRODUCTION

1. By this motion, Defendants seek dismissal of the Trustee's second attempt to state claims for breach of contract arising from alleged transfers to or for the benefit of the Defendants. As shown below, the Trustee has recycled the very same fatally flawed claims that did not survive Defendants' first motion to dismiss. Here, the Amended Complaint, just like the original pleading, alleges that one or more of the Defendants entered into a contract with one or more of the Debtors under which the Debtors would lend the Defendants millions of dollars and Defendants would repay the Debtors without alleging a single new fact indicating why the Trustee asserts there was such an agreement.[1]

2. Defendants previously moved to dismiss that claim precisely because the Trustee failed to plead any facts indicating a contract between the parties actually existed [ECF No. 6]. This Court agreed [ECF No. 14], but granted the Trustee an opportunity to re-plead with specific facts concerning the alleged agreement:

---

[1] In contrast, with respect his unpaid professional services claims (Counts 1-2), the Trustee buttressed his complaint with allegations concerning the specific services provided and the nature of the parties' relationship. While Defendants vigorously contest those claims, they do not move to dismiss them under Rule 12(b)(6).

1

> If you're alleging some kind of implied contract, if you're alleging there's an agreement, but you weren't there and you don't know the terms … at least allege why you think there was an agreement …
>
> And as to the expenses, you sort of indicated in your papers that, well, maybe this is an implied in-law contract rather than an express contract. I think you need to … be a little more specific as to exactly what you're alleging and on what basis. I think he's got a good point about that. Okay?

See Samet Decl. (filed together herewith) at Exhibit A (Dec. 2, 2015 Hr'g Tr. at 14:1-23).

3. Instead, this "amended" claim relies on one new word inserted into the initial complaint: "implied." That is not enough as a matter of law.

4. To state an implied contract claim, a plaintiff must allege the parties' conduct indicates they would have agreed to certain terms had they thought to commit such terms to writing but did not. The Trustee alleges no such facts: no allegations of the parties' conduct, no allegations of book entries or other Debtor records indicating some outstanding obligation, and no allegations of any contemporaneous communication. Nor does the Trustee allege the Debtors were generally in the business of making loans.

5. Nor does the Trustee allege that the Debtors themselves played any role in advancing *any* monies to the Defendants under this supposed contract. Instead, the Trustee alleges, in the passive voice, the funds were transferred from an IOLA account that belonged to Jonathan Bristol, an attorney who represented both the Debtors and Defendants. The Trustee admits $2.5 million of the transfers at issue originally came from Stacey Lloyd (an individual with whom Ms. Leibovitz had a direct contract) and not the Debtors. In total, the Trustee asserts that just 17% of the funds transferred were attributable to the Debtors (although the Trustee does not specify how he arrives at this figure).

6. The Trustee may well have unanswered questions about the Debtors' records. However, if the Trustee does not have adequate facts to allege the existence of a contract, he should

2

not have brought these claims. It is inappropriate to try to shift the burden to the Defendants to explain these transfers or what Messrs. Bristol or Starr may or may not have been doing. The Trustee has not asserted an avoidable transfer claim and is merely seeking to obtain the same relief by "implying" – in actuality inferring – the existence of some contract. However, with no allegation of an actual contract, no circumstances from which an implied contract can be inferred, and an admission that the overwhelming majority of funds transferred had nothing to do with the Debtors, there is no basis upon which the Trustee can pursue his contract claims. This Court should dismiss them.

### STATEMENT PURSUANT TO RULE 7012(b)

7. This proceeding is non-core and Defendants do not consent to entry of final orders or judgments by this Court.

### FACTS ALLEGED IN THE AMENDED COMPLAINT

8. The following facts are from the Amended Complaint (unless otherwise stated) and are disputed by the Defendants, but the well-pled factual allegations are necessarily assumed to be true for purposes of this motion.

Facts Relating to the Bristol IOLA Account Transfers

9. Between April 2, 2009 and an unspecified date in September 2009, approximately $3.25 million was transferred from an IOLA account maintained by Jonathan Bristol to or for the benefit of Leibovitz Studio, Ms. Leibovitz, and "Leibovitz and/or her Companies." Am. Compl. at ¶¶29-30.

10. Other than the reference to "and/or her Companies" there are no allegations that Defendants 305-307 West 11th Street LLC or 311 West 11th Street LLC received any benefit from any transfer. *See id.*

3

11.     Mr. Bristol was an attorney for the Debtors. *Id.* at ¶29. He was also Ms. Leibovitz's attorney. *See* Master Set Sale Agreement at § 5.13 (defined below).

12.     $2.5 million of the roughly $3.25 million in total transfers "were paid out of funds of Stacy Lloyd … that had been deposited in the Bristol IOLA Account." Am. Compl. at ¶30.[2] Further, of the roughly $3.25 million in total transfers, $200,000 "were paid out of funds of Fred Hochburg … that had been deposited into the Bristol IOLA Account." *Id.*

13.     The Trustee alleges "the balance of the Defendants' expenses paid as aforesaid, in the amount of $594,796.00 were paid from funds of the Debtor that had been deposited into the Bristol IOLA Account." *Id. at* ¶30. It is unclear what this means as $3.25 million minus $2.7 million is $550,000. The Trustee does not identify any transfers which relate to or total his $594,796 figure.

14.     The Trustee does not allege any Debtors were involved with, directed, or caused any of the transfers from the Bristol IOLA account.

Facts Relating to Implied Loan Agreement

15.     The sum total of facts relating to the alleged agreement is the following:

> In or about April 2009, Leibovitz and the Companies on the one hand and the Debtors on the other entered into an implied agreement whereby: (i) the Debtors agreed to make payments directly to Leibovitz and/or to third parties on behalf of Leibovitz and/or her Companies, to cover various expenses incurred by and/or on behalf

---

[2] The Trustee does not explain what he means by this allegation. However, we believe it likely that the Trustee is referring to the 2009 Purchase and Sale Agreement, pursuant to which Ms. Lloyd was to pay Ms. Leibovitz $2.5 million for a master set of Ms. Leibovitz's prints. Samet Decl. at Exhibit B (the "Master Set Sale Agreement"). Needless to say, if this is the case, it remains unexplained how this could be considered an alleged loan from the Debtors. A plaintiff cannot omit an integral document and then rely on that omission to create an issue of fact. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991) ("we have held that when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure").

4

      of Leibovitz and/or her Companies; and (ii) Leibovitz and/or her
      Companies would reimburse the Debtors for all of the aforesaid
      payments (the "Expense Transfer Agreement").

Am. Compl. at ¶28.

16.     The only differences between this allegation and the allegation in the original complaint is (a) the insertion of the word "implied" before the word "agreement" and (b) the replacement of the word "Defendants" with the phrase "Leibovitz and/or her Companies." Samet Decl. at <u>Exhibit C</u> (Redline Comparison of Initial and Amended Complaint).[3]

## THE LEGAL STANDARD UNDER RULE 12(b)(6)

17.     Under *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), the Trustee must allege plausible facts to support his claim. It is not enough to plead facts that are "merely consistent with a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotations omitted). Thus, "[w]hen there are two potential explanations for a defendant's conduct—one innocent and one suggesting wrongdoing—a plaintiff's inference of fraudulent intent must be at least as compelling as any competing inference." *Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, 541 B.R. 172, 196 (Bankr. S.D.N.Y. 2015).[4]

---

[3] The repetition of the awkward phrase "Leibovitz and/or her Companies" appears designed to respond to Defendants' initial motion to dismiss which pointed out that agreements to pay the debt of another must be in writing under New York's statute of frauds.

[4] In *Lyondell*, the Court rejected the Trustee's inference of fraudulent intent on *Twombly/Iqbal* plausibility grounds. 541 B.R. at 196. Here, the Trustee seeks an inference of mutual intent to enter into a contract. *See also In re LightSquared Inc.*, 504 B.R. 321, 349 (Bankr. S.D.N.Y. 2013) (concluding that debtor's controlling shareholder failed to plead facts sufficient to support allegation that parties affiliated with creditor (DISH Network and affiliates) knowingly and intentionally, and for tactical purposes, interfered with trading where market factors could have just as easily played a role).

5

# THIS COURT SHOULD DISMISS THE
# IMPLIED BREACH OF CONTRACT CLAIMS

**I. THE AMENDED COMPLAINT IS VIRTUALLY IDENTICAL TO THE COMPLAINT WHICH THIS COURT ALREADY DISMISSED**

18.     As noted above, this Court already dismissed the contract claim based solely upon the transfers and required the Trustee to plead facts as to "why [the Trustee] thought there was an agreement." The Amended Complaint contains no additional facts concerning why the Trustee believes there to have been an agreement between the Debtors and the Defendants. Samet Decl. at Exhibit C (Redline).

**II. THE AMENDED COMPLAINT FAILS TO PLEAD THE ELEMENTS OF AN IMPLIED CONTRACT**

19.     "[A]n implied-in-fact contract arises 'when the agreement and promise have simply not been expressed in words,' but 'a court may justifiably infer that the promise would have been explicitly made, had attention been drawn to it.'" *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 376 n.5 (2d Cir. 2000) quoting *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 93 (1999). Accordingly, an implied contract still requires a plaintiff to allege the elements of "consideration, mutual assent, legal capacity and legal subject matter." *Maas*, 94 N.Y.2d at 94. "The conduct of a party may manifest assent if the party intends to engage in such conduct and knows that such conduct gives rise to an inference of assent." *Id.* (holding complaint which failed to plead such assent did not state a cognizable breach of contract claim).

20.     Courts routinely dismiss implied breach of contract cases for failing to adequately allege facts demonstrating mutual assent. *See*, *e.g.*, *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp.3d 441, 455 (S.D.N.Y. 2014) (dismissing breach of implied contract claim for failure to adequately plead mutual assent); *Leibowitz v. Cornell Univ.*, No. 03-cv-9976, 2005 WL 267560, at *7 (S.D.N.Y. Feb. 3, 2005), *aff'd*, 445 F.3d 586 (2d Cir. 2006) (dismissing breach of implied

6

contract claim on the grounds that the complaint "fails to set forth the requisite factual allegations upon which it can be inferred that the parties intended to enter into a[n] [implied] contract"); *San Lan v. Time Warner, Inc.*, No. 11-cv-2870, 2013 WL 1703584, at *5 (S.D.N.Y. April 19, 2013) ("when a plaintiff cannot point to 'sufficient specific, concrete, factual representations such that they could be interpreted to supply the terms of an implied contract,' she has failed to state a cause of action").

21. Here, the Trustee has pled no facts indicating any "conduct giv[ing] rise to an inference of assent." *Maas*, 94 N.Y.2d at 94. The Trustee has not alleged that he has any Debtor records indicating an outstanding obligation to repay owing from any of the Defendants, any book entries recording loan balances or interest payments, any contemporaneous notes relating to the alleged agreement, any request by any of the Defendants to borrow money, any interest accruing on the loan, or any repayment or demand therefor.

22. Other than the oblique reference to "Leibovitz and/or her Companies," the Trustee has not pled the involvement of any human being who might have engaged in conduct indicating mutual assent (*i.e.* the individuals at the Debtors or at the Defendants responsible for entering into these loans or taking acts in accordance with them).

23. The Trustee has once again pled only the transfers themselves.[5] The Trustee does not allege that the Debtors had any role in making the transfers. Instead, the he has only pled – in

---

[5] The Trustee cannot assert that transfers themselves manifest a mutual assent to enter into a loan. *Cf. Geftman v. C.I.R.*, 154 F.3d 61, 70 (3d Cir. 1998) (citing *Haag v. C.I.R.*, 88 T.C. 604, 615-16, 1987 WL 49288 (1987), *aff'd*, 855 F.2d 855 (8th Cir. 1988)) ("The mere fact that a transfer occurred does not establish whether that transfer was intended as a bona fide loan with the requisite unconditional intention to repay"); *Dickinson v. C.I.R.*, T.C. Memo. 2014-136, 2014 WL 3377066, at *4-6 (July 10, 2014) (husband's transfers to business associate were not bona fide loans absent objective indicia of indebtedness); *In re Zambrano Corp.*, 478 B.R. 670, 691 (Bankr. W.D. Pa. 2012) ("The record shows that a debt instrument is absent, Hillcrest put up no collateral, the Transfer was made interest-free, there was no repayment schedule, and Hillcrest never made any actual payments to the Debtor … The Hillcrest Transfer fails the 'objective test

conclusory fashion – that approximately 15% of the funds transferred from the Bristol IOLA account are somehow traceable to the Debtors. The 15% figure does not relate to any specific transfer or transfers and it is therefore difficult, if not impossible, to infer mutual assent on the part of either the Debtors or Defendants from this conclusory allegation. Similarly, the Trustee's attempt to allocate some further percentage of this 15% figure is inconsistent with any allegation of mutual assent on behalf of each of the Defendants.[6]

24.     Respectfully, this is merely an avoidable transfer claim dressed up as a breach of implied-in-fact contract claim because the Trustee is unable to assert an avoidable transfer claim. Without alleging any plausible facts or conduct of the parties that indicate their mutual assent to enter into a contract or, for that matter, any other terms of the alleged contract, the breach of implied-in-fact contract claims must be dismissed.

### III.     EVEN IF THE TRUSTEE HAD ADEQUATELY PLED AN IMPLIED CONTRACT, HIS PERCENTAGE OBLIGATION CLAIMS MAKE NO SENSE

25.     Even if the Trustee had pled the existence of a theoretical implied contract – which he has not – the Trustee's three percentage claims against three sets of defendants make no sense. The Trustee seeks $506,251 from Leibovitz Studio (Count 3), $53,532 from Ms. Leibovitz (Count 4), and $35,014 from "Leibovitz and/or her Companies" (Count 5). None of these numbers match any transfer or series of transfers alleged to have been made. Instead, the Trustee appears to have performed some sort of mathematical calculation to apportion the amount owed from these Defendants.

---

of economic reality;' this Court finds that the … Transfer is not a loan"); *Karns Prime & Fancy Food, Ltd. v. C.I.R.*, T.C. Memo. 2005-233, 2005 WL 2464615, at *9-11 (Oct. 5, 2005) (rejecting contention that "$1.5 million advance by Super Rite to petitioner created an unconditional obligation on the part of petition to repay those funds," following objective evaluation of whether a loan existed).

[6] The fact that the Trustee's numbers do not add up make the claims even more implausible.

8

26. The Trustee admits $2.7 million of the transfers at issue never belonged to the Debtors. Nevertheless, the Trustee includes these amounts in his calculation of what is allegedly owed by each entity. *See* Am. Compl. ¶43 n.5, ¶47 n.6, ¶51 n.7.

27. The Trustee does not allege how he arrives at a "balance" of $594,796. Assuming the Trustee is subtracting the non-Debtor funds from the transfers, this would result in an amount of $556,407. Nor does the Trustee explain why he concluded subtracting non-Debtor funds from the aggregate amount of the Bristol IOLA account transfers results in a "balance" attributable to the Debtors and not to any other party.

28. Finally, the Amended Complaint contains no facts relating to Defendants 305-307 West 11th Street LLC and 311 West 11th Street LLC. At such, those Defendants must be dismissed from the breach of contract action.

## CONCLUSION

Counts 3-5 of the Amended Complaint should be dismissed.

Dated: March 16, 2016  
      New York, New York

Respectfully submitted,

/s/ Avery Samet  
Bijan Amini  
Avery Samet  
Jeffrey Chubak  
STORCH AMINI & MUNVES PC  
2 Grand Central Tower  
140 East 45th Street, 25th Floor  
New York, New York 10017  
(212) 490-4100

*Attorneys for the Defendants*

9