**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 Case No. 11-10219 (MEW) |
| KENNETH IRA STARR, *et al.*, | Jointly Administered |
| Debtors. | Substantively Consolidated |
| ROBERT L. GELTZER, AS CHAPTER 7 TRUSTEE OF KENNETH IRA STARR, STARR & COMPANY, LLC, and STARR INVESTMENT ADVISORS, LLC, Plaintiff, | |
| - against - | Adv. Pro. No. 14-2446 (MEW) |
| ANNALOU LEIBOVITZ a/k/a ANNIE LEIBOVITZ, LEIBOVITZ STUDIO, INC., 305-307 WEST 11th STREET LLC, and 311 WEST 11th STREET LLC, Defendants. | |

<u>**DECLARATION OF AVERY SAMET**</u>

I, Avery Samet, hereby declare:

I am attorney with the law firm of Storch Amini & Munves PC, attorneys for defendants in the above-captioned adversary proceeding. I submit this declaration in support of defendants' motion to dismiss Counts 3-5 of plaintiff's amended complaint.

1.      Attached as <u>Exhibit A</u> is a true and correct copy of an excerpt of the December 2, 2015 hearing transcript in this adversary proceeding.

2.      Attached as <u>Exhibit B</u> is a true and correct copy of that certain Annie Leibovitz Limited Edition Master Set Purchase and Sale Agreement, between Ms. Leibovitz and Leibovitz Studio, Inc., as sellers, and Stacy Lloyd, as purchaser, dated as of March 1, 2009.

3.      Attached as <u>Exhibit C</u> is a blackline comparison of initial complaint at ¶¶24-27 (allegations in support of plaintiff's "aggregate expense transfer" breach of contract claim) and ¶¶44-48 (breach of contract claim) against the amended complaint at ¶¶28-31 (allegations) and ¶¶42-53 (implied breach of contract claims).

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: March 16, 2016
New York, New York

/s/ Avery Samet
Avery Samet

## **EXHIBIT A**

**Dec. 2, 2015 Hr'g Tr. Excerpt**

```
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK


                                    .  Case No.  11-10219-mew
IN RE:                              .
                                    .  Chapter 7
KENNETH IRA STARR,                  .
                                    .
            Debtor.                 .
. . . . . . . . . . . . . . . . .   .
ROBERT L. GELTZER, AS CHAPTER 7     .  Adv. Proc. 14-02446
TRUSTEE OF IRA STARR,               .
STARR & COMPANY, LLC, AND           .
STARR INVESTMENT ADVISORS, LLC,     .
                                    .
            Plaintiff,              .
    v.                              .  One Bowling Green
                                    .  New York, NY  10004-1408
ANNALOU LEIBOVITZ, et al,           .
                                    .  Wednesday, December 2, 2015
            Defendants.             .  10:04 a.m.
. . . . . . . . . . . . . . . . .
```

```
        TRANSCRIPT OF ADVERSARY PROCEEDING:  14-02466-mew
           ROBERT L. GELTZER, AS CHAPTER 7 TRUSTEE OF
         KENNETH V. LEIBOVITZ ET AL, MOTION BY DEFENDANTS
         TO DISMISS ADVERSARY PROCEEDING; OPPOSITION FILED;
       ADVERSARY PROCEEDING:  14-02466-mew ROBERT L. GELTZER,
        AS CHAPTER 7 TRUSTEE OF KENNETH V. LEIBOVITZ ET AL,
                       PRETRIAL CONFERENCE
             BEFORE THE HONORABLE MICHAEL E. WILES
               UNITED STATES BANKRUPTCY COURT JUDGE
```

TELEPHONIC APPEARANCES:

```
For the Plaintiff:        Tarter Krinsky & Drogin
                          By:  ROBERT A. WOLF, ESQ.
                          1350 Broadway, 11th Floor
                          New York, NY  10018
                          (212) 216-8000
```

APPEARANCES CONTINUED

Audio Operator:           R. Leill, ECRO

```
Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46038
                          (855) 873-2223
                          www.accesstranscripts.com
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (Continued):

For the Defendants:          Storch Amini & Munves, PC
                             By:  JEFFREY CHUBAK, ESQ.
                                  AVERY SAMET, ESQ.
                             140 East 45th Street, 25th Floor
                             New York, NY  10014
                             (212) 490-4100

13

1   Honor.  I assure Your Honor that we do have documentation now

2   which -- with which we can be more specific as to the

3   particular tax preparation services, the financial housekeeping

4   services, the taking care of preparing the payroll to the

5   defendant's employees, actually cutting the checks and

6   submitting them to Ms. Leibovitz and her entities for her

7   signature.  I'm more than happy to be more specific --

8           THE COURT:  Okay.  And when --

9           MR. WOLF:  -- in an amended pleading.

10          THE COURT:  I presume that her payment of prior

11  invoices is some evidence on which you base your allegation

12  that there was a reasonable expectation of payment here.

13          MR. WOLF:  It certainly is, Your Honor.

14          THE COURT:  So why don't you --

15          MR. WOLF:  She was paying before --

16          THE COURT:  But I didn't --

17          MR. WOLF:  -- for a number of years.

18          THE COURT:  -- see any description of what the prior

19  arrangement was.  You might want to put that in there too.

20          MR. WOLF:  We're more than happy to do that.

21          THE COURT:  Okay.  And as to replacing your account

22  stated claim with a claim of contract, I think it's -- yeah,

23  he's got a point.  What you alleged in the Barish case was

24  pretty thin, too.  You might want to be a little more specific

25  and less conclusory as to just if you're alleging an express

1  contract, just what's the basis, when was it made.  If you're

2  alleging some kind of implied contract, if you're alleging

3  there's an agreement, but you weren't there and you don't know

4  the terms --

5            MR. WOLF:  Right.

6            THE COURT:  -- at least allege why you think there

7  was an agreement.

8            MR. WOLF:  Okay.

9            THE COURT:  Okay.  So I think also that he's got a

10  legitimate point that you've lumped the defendants too much.

11  You just identified three of them and then the rest of the

12  complaint is the defendants this, the defendants that.

13            MR. WOLF:  Right.

14            THE COURT:  If you're going to make claims against

15  all three of them, at least specify why you're making claims

16  against the three of them and what the basis is and to the

17  extent to which you claim each is liable.

18            And as to the expenses, you sort of indicated in your

19  papers that, well, maybe this is an implied in-law contract

20  rather than express contract.  I think you need to be -- when

21  you amend your pleading, be a little more specific as to

22  exactly what you're alleging and on what basis.  I think he's

23  got a good point about that.  Okay?

24            MR. WOLF:  We will do that, Your Honor.

25            THE COURT:  All right.  So how much time do you need

## **EXHIBIT B**

**Master Set Sale Agreement**



MASTER SALE
$2,500,000
* page 11

### Annie Leibovitz Limited Edition Master Set Purchase and Sale Agreement

Between

**Annie Leibovitz**
and
**Leibovitz Studio, Inc.,**
as sellers

And

**Stacy B. Lloyd, III,**
as purchaser

Dated as of March 1, 2009

**This Annie Leibovitz Limited Edition Master Set Purchase and Sale Agreement** (this "Agreement"), dated as of March 1, 2009 (the "Agreement Date"), is between **Annie Leibovitz** (individually, "Annie") and **Leibovitz Studio, Inc.**, a New York corporation (individually, the "Studio"; and Annie and the Studio are collectively hereinafter referred to as the "Photographer"), as sellers, whose address is in care of Leibovitz Studio, Inc., 755 Greenwich Street, New York, New York 10014, Attention: Annie Leibovitz (the "Photographer Address"), and **Stacy B. Lloyd, III** (the "Patron of the Arts"), as purchaser, whose address is in care of Starr & Company, LLC, 850 Third Avenue, 15th Floor, New York, New York 10022, Attention: Kenneth I. Starr (the "Patron of the Arts Address").

The Photographer and the Patron of the Arts are collectively hereinafter referred to as the "Parties."

### Preliminary Statement

Annie is an American portrait photographer who is recognized on an international basis by photography experts and other professionals in the arts as being one of the most celebrated photographers of her time.

Annie's photographic artistry includes taking original iconic photographs and, in that connection, Annie desires to create a limited edition master set comprised of one hundred fifty (150) of her original iconic archival photographs, which photographs shall be selected by Annie after reviewing the definitive set of negative and positive images representing, in Annie's

professional judgment, her best and most important photographic work from 1968 through 2009 (the "<u>Annie Leibovitz Limited Edition Master Set</u>"), it being the intention that the photographs to be included in the Annie Leibovitz Limited Edition Master Set will constitute Annie's best and most important photographic work over such approximately forty (40) year period.

Annie and the Studio have devoted significant time, creativity, artistic talent, effort, and attention in order to develop and refine the concept for the Annie Leibovitz Limited Edition Master Set.

Annie and the Studio have determined that only ten (10) Annie Leibovitz Limited Edition Master Sets plus two (2) printer's proofs, will ever be produced (or reproduced). This determine by Annie and the Studio means that only twelve (12) copies of each of the photographs in the Annie Leibovitz Limited Edition Master Set will ever be produced by Annie and the Studio and that all Annie Leibovitz Limited Edition Masters Sets will contain, in the aggregate, one thousand eight hundred and eighty four (1,884) numbered photographs and unnumbered artist proofs. To carry out the intention of creating an exclusive and rare limited edition master set, the Annie Leibovitz Limited Edition Master Sets shall be subject to the "<u>Annie Leibovitz Limited Edition Master Set Restrictive Covenant</u>" (as hereinafter defined), restricting further production or creation thereof.

The Patron of the Arts recognizes as unique the opportunity to acquire an Annie Leibovitz Limited Edition Master Set that is limited in number as aforesaid. The Annie Leibovitz Limited Edition Master Set to be acquired by the Patron of the Arts shall be subject to the "<u>Restrictive Art Ownership Covenant</u>" and "<u>Defeasance Condition</u>" (both as hereinafter defined).

The Photographer desires to sell the Annie Leibovitz Limited Edition Master Set to the Patron of the Arts, on the terms and subject to the conditions set forth in this Agreement, including, among other terms and conditions, the "<u>Restrictive Art Ownership Covenant</u>" and "<u>Defeasance Condition</u>" (both as hereinafter defined).

The Patron of the Arts desires to purchase the Annie Leibovitz Limited Edition Master Set from the Photographer, on the terms and subject to the conditions set forth in this Agreement, including, among other terms and conditions, the "<u>Annie Leibovitz Limited Edition Master Set Restrictive Covenant</u>" (as hereinafter defined).

The Patron of the Arts and the Photographer are executing and delivering this Agreement to set forth the terms and conditions on which the Patron of the Arts shall purchase from the Photographer and the Photographer shall sell to the Patron of the Arts an Annie Leibovitz Limited Edition Master Set.

**Now, Therefore,** in consideration of the foregoing, of the mutual covenants and agreements herein contained, to set forth the terms and conditions agreed upon by the contracting Parties relative to the purchase and sale of an Annie Leibovitz Limited Edition Master Set, including any restrictive covenants relative thereto and applicable defeasance conditions (if any), and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, the Parties covenant and agree:

ARTICLE 1:

DEFINED TERMS AND INTERPRETATION

1.1 <u>Defined Terms</u>. The following terms shall have the following meanings:

"<u>Agreement</u>" has the meaning ascribed to such term in the Opening Paragraph hereof and shall be deemed to include all modification, amendments, or other changes hereto that are made pursuant to and in compliance with the terms and conditions of this Agreement.

"<u>Agreement Date</u>" has the meaning ascribed to such term in the Opening Paragraph hereof.

"<u>Annie</u>" has the meaning ascribed to such term in the Opening Paragraph hereof.

"<u>Annie Leibovitz Limited Edition Master Set</u>" has the meaning ascribed to such term in the Preliminary Statement hereof.

"<u>Annie Leibovitz Limited Edition Master Set #5</u>" has the meaning ascribed to such term in <u>Section 2.1(v)</u> hereof.

"<u>Annie Leibovitz Limited Edition Master Set Restrictive Covenant</u>" has the meaning ascribed to such term in <u>Section 2.1(a)(v)</u> hereof.

"<u>Applicable Laws</u>" means all federal, state, county, local, and other Governmental Authority's laws, statutes, rules, regulations, orders, decrees, codes (including building and construction), rulings, ordinances, directives, registrations, controls, policies, criteria, guidelines, covenants, restrictions, conditions, mandates, injunctions, rules of common law, precedents, decided matters, and judgments, in effect (in each case as amended, modified, replaced, restated, revised, superseded, supplemented, or otherwise changed from time to time), any judicial, regulatory, administrative, or other adjudicative authority application or interpretation thereof, including, among other things, any judicial, regulatory, administrative, or other adjudicative authority order, consent, stipulation, decree, directive, injunction, ruling, restraint, or judgment (in each case as amended, modified, replaced, restated, revised, superseded, supplemented, or otherwise changed from time to time), and any contract or other agreement with any Governmental Authorities affecting or potentially affecting any one or more of the Photographer, the Patron of the Arts, each Annie Leibovitz Limited Edition Master Set, the Transactions, or this Agreement.

"<u>Bankruptcy Matters</u>" has the meaning ascribed to such term in the definition of "<u>Financial Insolvency</u>:"

"<u>Business Day</u>" means a day on which banks are generally permitted to be open for business in the Great State of New York and, in any event, any day other than a Saturday, Sunday, or public holiday generally for banks in the Great State of New York.

"Closing Purchase Price Payment" has the meaning ascribed to such term in Section 2.1(d)(iv) hereof.

"Closing Date" has the meaning ascribed to such term in Section 2.1(d)(iv) hereof.

"Conflict Approved Parties" has the meaning ascribed to such term in Section 5.13 hereof.

"Conflict of Interest Disclosure, Consent, and Waiver" has the meaning ascribed to such term in Section 5.13 hereof.

"Defeasance Condition" has the meaning ascribed to such term in Section 2.1(a)(viii) hereof.

"Financial Insolvency," "Financially Insolvent," and like or correlative words or phrases means, with respect to any Person:

(a)    Trustee, Etc. If by order of a Governmental Authority any trustee, receiver, liquidator, judicial custodian, compulsory manager, administrator, or the like is appointed in connection with the Person in question, and such order is not discharged or dismissed within one hundred (100) calendar days after the date of such appointment; or

(b)    Voluntary Bankruptcy. If the Person in question commences a voluntary case under any applicable bankruptcy, composition, dissolution, moratorium, winding-up, liquidation, attachment, arrestment, sequestration, distress, diligence, execution affects on assets or property, insolvency, or other similar law now or hereafter in effect, or consents to the entry of an order for relief in an involuntary case commenced against the Person in question under any such law, or to the appointment of or taking possession by any receiver, liquidator, assignee, trustee, custodian, sequestrator or similar Person of the Person in question or of any substantial part of its property, or if the Person in question makes any general assignment for the benefit of creditors when other creditors who are similarly situated are not being paid, of if the Person in question generally does not pay their debts as and when they become due and owing or is unable to pay its debts as and when they become due and owing or admits an inability to pay its debts as and when they become due and owing (and, in this connection, for the avoidance of doubt, an inability to pay one's debts shall be deemed to be an inability or failure to pay when and as the same become due and owing the amounts due in connection with any loans, credit facilities, or like financial accommodations or an inability to make preferential or other payments on equity as the same become due or are required to be distributed); or

(c)    <u>Involuntary Bankruptcy</u>. If any of the creditors of the Person in question commence against the Person in question an involuntary case under any applicable bankruptcy, composition, dissolution, moratorium, winding-up, liquidation, attachment, arrestment, sequestration, distress, diligence, execution affects on assets or property, insolvency, or other similar law now or hereafter in effect and if such case is not discharged or dismissed within one hundred (100) calendar days after the date on which such case was commenced, or if the Person in question is adjudicated to be an insolvent, or filed a petition under any other reorganization, arrangement, composition, readjustment, liquidation or dissolution provision under any federal or state law, statute, rule, regulation or code now or hereafter in effect, or files an answer admitting to any of the material allegations of any petition filed against it in any such action, suit, or proceeding described in <u>clauses (a)</u> through <u>(c)</u> of this definition of "<u>Financial Insolvency</u>" and "<u>Financially Insolvent</u>" and like or correlative words or phrases (collectively, "<u>Bankruptcy Matters</u>"); or

(d)    <u>Meeting of Creditors</u>. If a meeting of the Person in question is convened for the purpose of considering any resolution for, or to petition for, winding-up or its administration or if any resolution relating with respect thereto or with respect to Bankruptcy Matters, or if an order for winding-up or administration is made, or if any other material step (including petition, resolution, proposal, or convening a meeting) is taken with a view to the rehabilitation, bankruptcy, insolvency, moratorium, composition, administration, custodianship, liquidation, winding-up, dissolution, or any other insolvency proceedings or Bankruptcy Matters of the Person in question, unless the same are frivolous or vexatious and discharged or dismissed within one hundred (100) calendar days of their commencement or taking place; or

(e)    <u>Business Fails to be Carried On</u>. If the Person in question fails to carry on all or a substantial part of its business; or

(f)    <u>Governmental Seizure</u>. If the authority or ability of the Person in question to conduct its business is materially curtailed or limited by any seizure, expropriation, intervention, constraint, restriction, or other action taken by or on behalf of any Governmental Authority.

"<u>Governmental Authorities</u>" means all federal, state, county, local, or other law or governmental, or any subdivision of any or all of the foregoing or any quasi-governmental agency, board, bureau, office, court, tribunal, adjudicative authority, commission, department, instrumentality or public body, or any administrative agency, regulator, or other tribunal having jurisdiction over any one or more of the Photographer, the Patron of the Arts, each Annie Leibovitz Limited Edition Master Set, the Transactions, or this Agreement or the application thereof to any Person.

"Initial Purchase Price Payment" has the meaning ascribed to such term in Section 2.1(d)(i) hereof.

"Lien" means any lien, charge, claim, encumbrance, security interest, mortgage, deed of trust, escrow, hypothecation, pledge, deposit, condition, setting over, conditional sale, delegation, lease, granting of rights or powers or privileges in, assignment, transfer, or placing or permitting the placing of any device of any and every nature whatsoever, or any oral or written agreement to do the same, whether (a) absolute or collateral, (b) superior, subordinate, or *pari passu*, (c) direct or indirect, (d) voluntary or involuntary, (e) by operation of Applicable Law or otherwise, or (f) in whole or in part.

"Parties" has the meaning ascribed to such term in the Opening Paragraph hereof.

"Patron of the Arts" has the meaning ascribed to such term in the Opening Paragraph hereof.

"Patron of the Arts Address" has the meaning ascribed to such term in the Opening Paragraph hereof.

"Person" means any legal person, including, among others, any natural person, corporation, trust, partnership (whether limited or general), estate, trust, joint venture, consortium, limited liability company, limited liability partnership, association, sovereign, Governmental Authority, custodian, nominee or any other individual persons or entities or series thereof in its or their own names or in any representative capacity, any other business entity of any kind or nature whatsoever, or any other person or entity of any other kind or nature whatsoever, together with any combination of any one or more of the foregoing, whether domestic or foreign, and their respective successors and assigns.

"Photographer" has the meaning ascribed to such term in the Opening Paragraph hereof.

"Photographer Address" has the meaning ascribed to such term in the Opening Paragraph hereof.

"Purchase Price" has the meaning ascribed to such term in Section 2.1(c) hereof.

"Reproduction" has the meaning ascribed to such term in Section 5.12 hereof.

"Restrictive Art Ownership Covenant" has the meaning ascribed to such term in Section 2.1(a)(viii) hereof.

"Second Purchase Price Payment" has the meaning ascribed to such term in Section 2.1(d)(ii) hereof.

"Studio" has the meaning ascribed to such term in the Opening Paragraph hereof.

"Third Purchase Price Payment" has the meaning ascribed to such term in Section 2.1(d)(iii) hereof.

"Transactions" means purchase by the Patron of the Arts and sale by the Photographer of an Annie Leibovitz Limited Edition Master Set pursuant hereto and the other transactions contemplated by this Agreement.

"Transfer" means any sale, bargain, grant, barter, exchange, transfer, turning over, setting over, passing on, handing over, escrow, assignment, delegation lease, delivery, escrow, hypothecation, pledge, deposit, condition, setting over, conditional sale, lease, granting of rights or powers or privileges in, assignment, transfer, or placing or permitting the placing of any device of any and every nature whatsoever, or any oral or written agreement to do the same, whether (a) absolute or collateral, (b) superior, subordinate, or *pari passu*, (c) direct or indirect, (d) voluntary or involuntary, (e) by operation of Applicable Law or otherwise, or (f) in whole or in part.

"United States Dollars" means lawful currency of the United States of America that is legal tender for the payment of public and private debts.

1.2    General Rules of Construction. Unless the context otherwise specifies or requires, as used in this Agreement:

(a)    Defined Term Cross Reference. Any term defined by reference to another document, instrument, record, or paper shall continue to have the meaning ascribed thereto whether or not such other document, instrument, record, or paper remains in effect.

(b)    Singular and Plural. The singular shall include the plural and the plural shall include the singular.

(c)    Gender. The use of any gender shall include all genders.

(d)    Document. Any document shall be deemed to include all amendments, restatements, supplements, modifications, replacements, or other changes in such document.

(e)    Person References. A reference to Person includes that Person's successors and permitted assigns.

(f)    United States Dollars. All amounts payable under this Agreement shall be paid in United States Dollars.

(g)    Defined Term Consistency. A term defined anywhere in this Agreement shall have the same meaning throughout this Agreement.

(h)    Consents and Approvals. Any consents, waivers, approvals, and items of like import shall be deemed to apply only to a

specific matter and shall not be deemed to be applicable to future or successive transactions.

(i)    Including References. References to "including" means "including, among other things" and "including, without limitation" and is not intended to limit the generality of any description preceding such term, and the use of the terms "includes" and "including" shall not be limiting.

(j)    References to Whole. The words "herein," "hereof,", "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision.

(k)    Incorporation by Reference. The Opening Paragraph and Preliminary Statement are incorporated by reference in this Agreement as if set forth at length herein and (unlike the headings, which are included for convenience of reference only) are included in the contract comprising this Agreement.

(l)    Inclusive References. The term "or" includes "and" as well as "or" and the use of the term "or" shall be deemed to be inclusive and not exclusive.

## ARTICLE 2:

## PURCHASE AND SALE; PAYMENT OF PURCHASE PRICE

2.1   (a)    Annie Leibovitz Limited Edition Master Set. Annie and the Studio jointly and severally represent and warrant to the Patron of the Arts as to the Annie Leibovitz Limited Edition Master Sets so as to induce the Patron of the Arts to enter into this Agreement that each Annie Leibovitz Limited Edition Master Set will:

(i)    157 Iconic Photographs: 1968 through 2009. Contain the same one hundred fifty seven (157) of Annie's original archival iconic photographs, which photographs shall be selected by Annie and constitute, in Annie's professional judgment, her best and most important photographic work from 1968 through 2009, and, in this connection, Annie further covenants and agrees to use her best efforts to assemble the Annie Leibovitz Limited Edition Master Set so that professionals in the arts and the photography industry will concur that such one hundred fifty seven (157) photographs constitute Annie's best and most important work over the last approximately forty (40) years;

(ii)    Print Sizes. Have print sizes ranging from 30" by 40" to 40" by 60";[*]

---

[*] Photographs included in the Annie Leibovitz Limited Edition Master Sets have been previously printed in editions of forty (40) 16" x 20" sized prints, which Photographer is entitled to fulfill.

(iii)    <u>Master Printer</u>. Be printed pursuant to and in compliance with the highest archival quality and standards currently available in digital fine-art printmaking in the photography industry as used by Tamarind Institute certified Master Printer David Adamson of Adamson Galleries and Adamson Editions;

(iv)    <u>Autographed by Annie and Identified</u>: Be physically autographed and numbered by Annie in her own original, genuine, and authentic signature and handwriting;

(v)    <u>Limited Edition Sets and Artist Proofs</u>. For purposes of clarity, the Photographer covenants and agrees that the Annie Leibovitz Limited Edition Master Sets will be limited to ten (10) numbered and two printer's proof sets of the original photographs, respectively, in the entire limited edition of master sets, each of which contains the same one hundred fifty seven (157) of Annie's original print edition archival iconic photographs, or one thousand eight hundred eighty-four (1,884) in the aggregate, in the entire artists proofs and photographs constituting the Annie Leibovitz Limited Edition Master Sets, and that no further or additional original photographs or artists proofs shall ever be reproduced in the sizes set forth in 2(a)(ii) (this being the "<u>Annie Leibovitz Limited Edition Master Sets Restrictive Covenant</u>"). With respect to the Annie Leibovitz Limited Edition Master Sets, the parties agree as follows::

(A)    <u>Annie Owned Set #10</u>. One (1) of the Annie Leibovitz Limited Edition Master Sets will be original numbered photographs, owned by Annie, and identified as limited edition number #10;

(B)    <u>SETS #1, #2 and #3</u>. Three (3) of the Annie Leibovitz Limited Edition Master Sets shall be original and be for each of Annie's children;

(C)    <u>Sets #4, #5, and #6</u>. Three (3) of the Annie Leibovitz Limited Edition Master Sets will be original numbered photographs and identified as limited edition numbers #4, #5, or #6, as applicable, and each of such sets *will not be subject* to the "<u>Restrictive Art Ownership Covenant</u>" (as hereinafter defined);

(D)    <u>Sets #7, #8, and #9</u>. Three (3) of the Annie Leibovitz Limited Edition Master Sets will be original photographs and be identified as limited edition numbers #7, #8, or #9, as applicable, and each of such sets *will be subject* to the "<u>Restrictive Art Ownership Covenant</u>" (as hereinafter defined);

(E)  Two printer's proofs.

(vi)      Background      Information.      Include      background
descriptions, written by Annie, of the nature of the subject matter of each
photograph and the circumstances surrounding the photography sessions in
which each photograph was taken by Annie;

(vii)     Sanctity of Annie Leibovitz Limited Edition Master Sets.
Other than the original photographs described in Section 2.1(a)(v)(A)
through (D), inclusive, the Photographer shall not directly or indirectly
authorize or permit the production or other making of fine art prints (nor
shall the Photographer suffer any other Person to do the same) from the
Annie Leibovitz Limited Edition Master Sets that violates the Annie
Leibovitz Limited Edition Master Sets Restrictive Covenant and the
Photographer shall not be entitled to modify, amend, or otherwise change
the Annie Leibovitz Limited Edition Master Sets Restrictive Covenant
(including all or any portion of this sentence) without the prior written
consent of the Patron of the Arts;

(viii)    Intellectual Property Matters. The sale by the Artist and
purchase by the Patron of the Arts of the Annie Leibovitz Limited Edition
Master Set under this Agreement shall not include the Transfer to the Patron
of the Arts any copyright or other intellectual property rights relative thereto
nor the right to photograph, copy, reproduce, or otherwise duplicate in any
medium any one or more of the photographs contained in the Annie
Leibovitz Limited Edition Master Set so sold by the Photographer and
purchased by the Patron of the Arts; and

(viii)    Restrictive Art Ownership Covenant. The purchase and
sale of any one or more of Sets #7, #8, and #9 of the Annie Leibovitz
Limited Edition Master Sets described in Section 2.1(a)(v)(D) shall be
subject to the restrictive covenant (the "Restrictive Art Ownership
Covenant") that each owner thereof from time to time shall not Transfer
partial ownership (i.e., fewer than all of the one hundred fifty (150)
photographs in the Annie Leibovitz Limited Edition Master Set) to any other
Person in such Annie Leibovitz Limited Edition Master Set until the death
or permanent disability of Annie (the "Defeasance Condition"), it being the
intent of the Parties that each Annie Leibovitz Limited Edition Master Set
that is subject to the Restrictive Art Ownership Covenant shall remain intact
as a whole until the Defeasance Condition has occurred and, after the
Defeasance Condition has occurred, the original photographs contained
therein may be Transferred to any one or more Persons in whole or in part at
the sole discretion of the owner thereof, and that the Annie Leibovitz
Limited Edition Master Set Restrictive Covenant shall remain in full force
and effect notwithstanding the occurrence or non-occurrence of the
Defeasance Condition.

(b)        Purchase and Sale. Subject to and upon the terms and conditions set forth in this Agreement, and for and in consideration of the "Purchase Price" (as hereinafter defined), the Photographer shall sell and otherwise Transfer to the Patron of the Arts and the Patron of the Arts shall purchase and pay for the Transfer of the Annie Leibovitz Limited Edition Master Set identified as numbered edition #7 ("Annie Leibovitz Limited Edition Master Set #7"), free and clear of all Liens.

(c)        Purchase Price. The purchase price (the "Purchase Price") for Annie Leibovitz Limited Edition Master Set #7 shall be Two Million Five Hundred Thousand United States Dollars and 00/100 ($2,500,000). The Patron of the Arts shall pay the Purchase Price to or at the direction of the Photographer in United States Dollars.

(d)        Payment of the Purchase Price. The Patron of the Arts shall pay the Purchase Price to or at the direction of the Photographer as follows:

(i)        Initial Purchase Price Payment. Two Hundred Thousand United States Dollars and 00/100 ($200,000) (the "Initial Purchase Price Payment") concurrently with the execution and delivery of this Agreement;

(ii)        Second Purchase Price Payment. Nine Hundred Thousand United States Dollars and 00/100 ($900,000) (the "Second Purchase Price Payment") not later than June 30, 2009;

(iii)        Third Purchase Price Payment. Nine Hundred Thousand United States Dollars and 00/100 ($900,000) (the "Third Purchase Price Payment") not later than January 1, 2010; and

(iv)        Closing Purchase Price Payment. Five Hundred Thousand United States Dollars and 00/100 ($900,000) (the "Closing Purchase Price Payment") no later than June 30, 2010 (such date being the "Closing Date").

(e)   Delivery of Annie Leibovitz Limited Edition Master Set #7. The Photographer shall be required to make physical delivery of the entire Annie Leibovitz Limited Edition Master Set #7 to the Patron of the Arts on the Closing Date at such place within the continental United States of America that is designated by the Patron of the Arts concurrently with and as a condition precedent to the Patron of the Arts making the Closing Purchase Price Payment to the Photographer. The Closing Date may not be modified, amended, or otherwise changed (including, among other things, extended) unless the Patron of the Arts and the Photographer execute and deliver a written agreement relative thereto.

(f)   Title Transfer Documents. On the Closing Date, the Photographer shall deliver to the Patron of the Arts (i) a commercially reasonable evidence of the transfer of title, such as a bill of sale, to be signed by the Photographer and the Patron of the Arts, containing, among other things, the Restrictive Art Ownership Covenant and the Annie Leibovitz Limited Edition Master

Set Restrictive Covenant, which shall be subject to the Defeasance Condition, vesting title to Annie Leibovitz Limited Edition Master Set #7 in the Patron of the Arts, free and clear of all Liens, and (ii) such other documents, instruments, records, and papers as the Patron of the Arts may reasonably require.

## ARTICLE 3:

## PHOTOGRAPHER REPRESENTATIONS, WARRANTIES, COVENANTS, AND AGREEMENTS

3.1    <u>Photographer Matters</u>. Annie and the Studio jointly and severally represent, warrants, covenant, and agree to and with the Patron of the Arts as follows:

(a) <u>Authorization</u>. This Agreement and the Transactions have been duly authorized by the Photographer.

(b) <u>Quality and Liens</u>. There are and will be no Liens on Annie Leibovitz Limited Edition Master Set #7 that is being sold by the Photographer and purchased by the Patron of the Arts, and on the Closing Date the Photographer shall deliver Annie Leibovitz Limited Edition Master Set #7 to the Patron of the Arts, free and clear of all Liens. Annie Leibovitz Limited Edition Master Set #7 shall be free from defects and of the quality and other characteristics described in <u>Section 2.1(a)</u> hereof. Annie Leibovitz Limited Edition Master Set #7 shall constitute rare fine art.

(c) <u>Transfer</u>. The Photographer shall not Transfer in whole or in part any direct or indirect interest in Annie Leibovitz Limited Edition Master Set #7 (including, among other things, any Transfer of the proceeds of the Purchase Price) without the prior written consent of the Patron of the Arts (which prior written consent may be given or withheld by the Patron of the Arts in its sole business judgment).

(d) <u>Execution and Delivery</u>. This Agreement has been duly executed and delivered by the Photographer.

(e) <u>Legal Contract</u>. This Agreement is the legal, valid, and binding agreement of the Photographer, enforceable against the Photographer in accordance with its terms (subject to customary exceptions for bankruptcy, insolvency, or an application of equitable principles).

(f) <u>No Conflict</u>. This Agreement and the Photographer engaging in the Transactions does not and will conflict with, constitute or result in a breach or violation of, or constitute or result in a default or event of default under the any document, instrument, record, paper, contract, or agreement of the Photographer or by which the Photographer is bound or has given its consent.

(g) <u>No Consents</u>. No consent, exemption, approval, notice,

waiver, release, filing, registration, recording, or other action of like import is required in connection with the Photographer executing and delivering this Agreement, engaging in the Transactions, and observing and performing the terms and conditions of this Agreement in all material respects, other than those, if any, that have been made and obtained, are in full force and effect, and not subject to revocation or suspension. The execution, delivery, observance, performance, and fulfillment of the terms and conditions of this Agreement by the Photographer do not and will not constitute a breach or default under any document, instrument, record, paper, contract, or agreement of the Photographer by which the Photographer is bound or has given its consent.

(h) <u>No Bankruptcy Matters</u>. Annie (as a natural person) is not (i) involved in any Bankruptcy Matters in which she is a debtor, (ii) Financially Insolvent, or (iii) contemplating initiating any proceedings relative to Financial Insolvency in which she would be a debtor. To the best knowledge of Annie, no Person has or is contemplating initiating any proceedings relative to Financial Insolvency in which Annie would be a debtor. The Studio is not (i) involved in any Bankruptcy Matters in which it is a debtor, (ii) Financially Insolvent, or (iii) contemplating initiating any proceedings relative to Financial Insolvency in which it would be a debtor. To the best knowledge of the Studio, no Person has or is contemplating initiating any proceedings relative to Financial Insolvency in which the Studio would be a debtor.

(i) <u>Annie Leibovitz Limited Edition Master Set Restrictive Covenant</u>. The Annie Leibovitz Limited Edition Master Sets shall at all times be subject to the Annie Leibovitz Limited Edition Master Set Restrictive Covenant, and the Annie Leibovitz Limited Edition Master Set Restrictive Covenant may not be modified, amended, or otherwise changed (including, among other things, increased as to size, terminated, suspended, revoked, or rescinded) without the prior written consent of the Patron of the Arts (which prior written consent may be given or withheld by the Patron of the Arts in its sole business judgment).

ARTICLE 4:

CERTAIN ECONOMIC AND VALUATION MATTERS

4.1    <u>No Representation or Warranty as to Value</u>. The Parties have not obtain an appraisal or other valuation of Annie Leibovitz Limited Edition Master Set #5. The Photographer shall not be entitled to payment from the Patron of the Arts of any increased amount or additional consideration if the value of Annie Leibovitz Limited Edition Master Set #5 increases after the Closing Date, and the Patron of the Arts shall not be entitled to payment from the Photographer of any refund or discount if the value of Annie Leibovitz Limited Edition Master Set #5 decreases after the Closing Date.

4.2    <u>Purchase Price Determination</u>. The Parties have agreed to the terms and

conditions of this Agreement, including, among others, the Purchase Price and number of photographs to be included in the Annie Leibovitz Limited Edition Master Set, in a manner and pursuant to procedures that are satisfactory to each Party, in form and substance, and are entering into this Agreement with the intent that the Agreement be interpreted, construed, and enforced in accordance with its express terms and conditions.

## ARTICLE 5:

## GENERAL CONDITIONS

## AND

## DOCUMENTARY CUSTOMS AND PRACTICES

5.1    No Third Party Beneficiaries. Nothing contained in this Agreement shall create a contractual relationship with, or any rights in favor of, any third Person who is not a party to this Agreement, expressly excluding Persons referred to in the "Conflicts of Interest Disclosure, Consent, and Waiver" (as hereinafter defined) as "Conflict Approved Parties" (as hereinafter defined), as to which such Persons are intended (and not incidental) third party beneficiaries.

5.2    Notices. All notices, consents, approvals, waivers, and other communications affecting the material rights of a Party under this Agreement shall be in writing and shall have been validly given only if (a) delivered by hand, (b) sent by certified or registered mail, postage prepaid, return receipt requested, or (c) delivered by a recognized courier service (including, among others, United Parcel Service or Federal Express) that confirms delivery thereof. Notices given pursuant to clauses (a), (b), or (c) of this Section 5.2 shall be deemed validly given when delivered, provided the Person giving the notice has commercially reasonable evidence of receipt of delivery to whom the notice was given. The Photographer may change the Photographer Address and the Patron of the Arts may change the Patron of the Arts Address pursuant to a written instrument given to the other one or more Persons who are entitled to notice on not less than ten (10) Business Days prior written notice to such one or more other Persons. Notice shall be given:

(a)    if to Patron of the Arts, to Patron of the Arts at the Patron of the Arts Address; and

(b)    if to the Photographer, to the Photographer at the Photographer Address with cc. to Martin B. O'Connor; and

(c)    in each case, with a copy concurrently to Starr & Company, LLC, 850 Third Avenue, 15th Floor, New York, New York 10022, Attention: Kenneth I. Starr.

5.3    Time is of the Essence. Whenever any matter is, by the terms of this Agreement, required to be observed or performed on a day that is not a Business Day, the observance and performance of such matter shall be due on the next succeeding Business Day, the Parties agreeing that an occurrence of that nature shall not be deemed to constitute

impossibility or impracticability of observance or performance, or both. Time is of the essence as to all dates set forth in this Agreement.

5.4    Whole Agreement; Etc.; Survival. The headings used in this Agreement are merely for convenience of reference only and shall not be construed to be part of the contract embodied in this Agreement. This Agreement constitute the entire agreement of the Parties relating to the subject matter hereof, and no representations, warranties, inducements, considerations, promises, or matters of like import may be implied as existing if they are not expressly addressed herein. The representations, warranties, covenants, and agreements contained in this Agreement shall survive the Closing Date.

5.5    Severability. If all or any portion of this Agreement or the application thereof to any Person is held by a Governmental Authority to be invalid, illegal, non-binding, or unenforceable, this Agreement shall be construed as if such invalid, illegal, non-binding, or unenforceable provision (an "Offending Contractual Provision") had never been contained therein and the remaining provisions of this Agreement or applications to a Party shall remain in full force and effect and shall not be affected, impaired, or invalidated by the Offending Contractual Provision.

5.6    Counterparts; Facsimile or Electronic Copies. This Agreement may be executed in counterparts, each of which shall be an original and all of which shall constitute one and the same instrument. Executed signature pages to this Agreement may be delivered by facsimile or electronic means and such facsimiles or electronic documents so exchanged shall be deemed as if actual signature pages had been delivered.

5.7    No Assignment or Delegation. No Party may directly or indirectly assign this Agreement or delegate any rights or duties under this Agreement.

5.8    Successors and Assigns. Subject to the matters set forth in Section 5.7, this Agreement shall inure to the benefit of and be binding on the Parties and their respective heirs, beneficiaries, executors, administrators, successors, and permitted assigns.

5.9    Modification, Amendment, or Other Change. This Agreement may not be modified, amended, waived, or otherwise changed, in whole or in part, orally (including all or any portion of this Section 5.9), and may only be modified, amended, waived, restated, or otherwise changed by a written agreement signed by the Parties.

5.10    Further Assurances. The Parties shall promptly do, execute, acknowledge, and deliver all further acts, documents, instruments, records, papers, and assurances as are reasonably necessary or required to carry out the intention and facilitate the observance and performance of this Agreement and the Transactions.

5.11    No Construction Against Drafting Party. Each of the Parties have been represented by independent counsel of their own selection in connection with the negotiation, execution, and delivery of this Agreement and, without waiving the attorney-client privilege and expressly preserving the same, the Parties have made such comments on this

Agreement as they have deemed necessary under the circumstances. The Parties intend that this Agreement shall not be construed against one Party or the other based upon any rule of Applicable Law giving preference in interpretation to the drafting or non-drafting Party or its counsel.

5.12    Reproduction and Evidentiary Matters. This Agreement may be reproduced by either or both Parties of the Parties by any photocopy, electronic, photographic, photostatic, microfilm, electronic means, digital miniature photographic, or other similar processes that are now technologically available or as may become available in the future (each a "Reproduction"). The Parties agree and stipulate that any such Reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such Reproduction was made in the regular course of business).

5.13    Conflicts of Interest Disclosure, Consent, and Waiver. The Photographer and the Patron of the Arts acknowledge and agree that they are aware that the Photographer and the Patron of the Arts have engaged and retained the professional services of (a) Starr & Company, LLC (Kenneth I. Starr) and (b) Winston & Strawn LLP (Jonathan S. Bristol, Esq.) (collectively hereinafter referred to as the "Conflict Approved Parties") and, consequently, the same may in technical form or substance, or both, now or hereafter give rise to a claim that a conflict of interest exists. Winston & Strawn LLP (Jonathan S. Bristol, Esq.) has represented the Patron of the Arts, and not the Photographer, with respect to this Agreement. Lowenstein Sandler LLP (Stephen Brawer, Esq.) has represented the Photographer with respect to this Agreement. Winston & Strawn LLP (Jonathan S. Bristol, Esq.) has represented the Photographer prior to the Agreement Date with respect to other matters, but not any matters directly or indirectly related to this Agreement or the Transactions. The Photographer and the Patron of the Arts acknowledge and agree that no Conflict Approved Party has any confidential information that would have an impact in any material respect on this Agreement or the Transactions and that neither Party has any claim or cause of action against the other or is considering instituting any litigation against the other Party. The Photographer and the Patron of the Arts hereby acknowledge the proper disclosure of the conflict of interest by each Conflict Approved Party and irrevocably consent to and waive any conflict of interest that may, actually or arguably, be claimed to exist at any time with respect to this Agreement or the Transactions (this being the "Conflict of Interest Disclosure, Consent, and Waiver"). In this connection, and without limiting the foregoing, the Photographer and the Patron of the Arts acknowledge and agree that they are sophisticated business Persons who, with the advice and assistance of others competent professionals, have negotiated all of the terms of this Agreement and the Transactions. Any claim or cause of action made by any Person after the Agreement Date of a conflict of interest with respect to the Conflict Approved Parties has been irrevocably waived and consented to hereby and this Section 5.13 may be pleaded by either or both of the Conflict Approved Parties and construed by any Governmental Authority, at the discretion of such Governmental Authority, as a paramount bar, waiver, and estoppel against such a conflict of interest claim. The Person making such conflict of interest claim or cause of action shall indemnify, pay, protect, advance costs and expenses (upon invoicing and not less frequently than monthly on a net 30-day basis), including reasonably incurred attorneys fees and disbursements of counsel to each Conflict Approved Party, and save and hold harmless each Conflict Approved Party with respect to any claim of a conflict of interest so made against any one or more of the Conflict Approved Parties.

5.14    Jurisdiction, Governing Law, and Jury Trial Waiver.

(a)    Governing Law and Jurisdiction. THIS AGREEMENT SHALL BE GOVERNED BY, CONSTRUED, INTERPRETED, AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE GREAT STATE OF NEW YORK (WITHOUT GIVING EFFECT TO THE GREAT STATE OF NEW YORK'S PRINCIPLES OF CONFLICTS OF LAW) APPLICABLE TO CONTRACTS MADE AND TO BE OBSERVED AND PERFORMED WITHIN THE GREAT STATE OF NEW YORK. THIS AGREEMENT WAS NEGOTIATED IN THE STATE OF NEW YORK, AND THE PARTIES AGREE THAT THE STATE OF NEW YORK HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTIONS EMBODIED HEREIN, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY, OBSERVANCE, AND PERFORMANCE. THE PARTIES HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVE ANY CLAIM TO ASSERT THAT THE LAWS OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT, AND THIS AGREEMENT SHALL THUS BE GOVERNED BY, CONSTRUED, INTERPRETED, AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE GREAT STATE OF NEW YORK.

(b)    Venue. ANY ACTION, SUIT, OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE BOROUGH OF MANHATTAN, CITY OF NEW YORK, COUNTY OF NEW YORK, AND STATE OF NEW YORK, PURSUANT TO SECTION 5-1402 OR OTHER APPLICABLE PROVISIONS OF THE NEW YORK GENERAL OBLIGATIONS LAW AND THE PARTIES WAIVE ANY OBJECTIONS WHICH EITHER OR BOTH MAY NOW OR HEREAFTER HAVE BASED ON VENUE OR FORUM *NON CONVENIENS* OF ANY SUCH ACTION, SUIT, OR PROCEEDING, AND HEREBY IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY SUCH COURT IN ANY ACTION, SUIT, OR PROCEEDING.

(c)    Jury Trial Waiver. THE PARTIES HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM (OTHER THAN A MANDATORY OR COMPULSORY COUNTERCLAIM) OR OTHER ACTION, SUIT, OR PROCEEDING ARISING IN CONNECTION HEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY THE PARTIES, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.

**[End of Text; Signature Page Follows]**

**In Witness Whereof,** the Photographer and the Patron of the Arts have executed and delivered this Agreement as of the Agreement Date.


Patron of the Arts Signature:


_____

**Stacy B. Lloyd, III**

Annie and Studio Signatures:

_____

**Annie Leibovitz**

**Leibovitz Studio, Inc.,**
a New York corporation

By: _____

**Annie Leibovitz**
President

**EXHIBIT C**

**Redline Comparison**

**C.**    **The Debtors' Payments to Cover Expenses of the Defendants**

~~24~~28.   In or about April~~,~~ 2009, ~~the Defendants~~Leibovitz and the Companies on the one hand, and the Debtors on the other, entered into an implied agreement whereby:  (i) the Debtors agreed to make payments directly to ~~Defendants~~Leibovitz and/or her Companies and/or to third parties on behalf of ~~the Defendants~~Leibovitz and/or her Companies, to cover various expenses incurred by and/or on behalf of ~~the Defendants;~~Leibovitz and/or her Companies, and (ii) ~~the Defendants~~Leibovitz and/or her Companies would reimburse the Debtors for all of the aforesaid payments (the **"Expense Transfer Agreement"**).

~~25~~29.   From in or about April~~,~~ 2009 through and including in or about September~~,~~ 2009, by way of funds, including funds of the Debtors, drawn from an IOLA account that was being maintained by the Debtors' then-attorney Jonathan Bristol, Esq. (the **"Bristol IOLA Account"**), a number of monetary transfers~~,~~ in the aggregate amount of $1,292,604~~,~~ were made to Leibovitz Studio to provide funds to Leibovitz Studio for payment of various expenses incurred by that ~~Defendant~~Company (the **"Leibovitz Studio Transfers"**). Below, is an itemized list of the Leibovitz Studio Transfers made from the Debtors' funds:

| Date | Amount |
|---|---|
| **April 17, 2009** | $75,000 |
| **April 21, 2009** | $75,000 |
| **May 8, 2009** | $50,000 |
| **June 30, 2009** | $192,604 |
| **August 17, 2009** | $100,000 |
| **September 11, 2009** | $800,000 |
| **TOTAL:** | $1,292,604 |

2630.  Also, from in or about April, 2009 through and including in or about September,

2009, by way of funds, including funds of the Debtors, drawn from the Bristol IOLA Account, the

following monetary transfers were made to various third parties in payment of various expenses

incurred by the DefendantsLeibovitz and/or her Companies:

| Date | Recipient | On Behalf Of | Amount |
|------|-----------|--------------|--------|
| **April 2, 2009** | NY Commissioner of Tax and Finance | Leibovitz and/or her Companies[41] | $99,308 |
| **April 2, 2009** | Rhinebeck Properties | Leibovitz | $149, 236 |
| **April 2, 2009** | JS Reps Corp – JP Morgan 937502193865 | Leibovitz and/or her Companies | $100,000 |
| **April 16, 2009** | Rhinebeck Properties | Leibovitz | $48,770 |
| **May 15, 2009** | 345 Abstract – Fidelity 1197545512 | Leibovitz | $87,456 |
| **October 9, 2009** | Art Capital Group | Leibovitz Studio | $221,637 |
| **June 30, 2009** | Art Capital Group – JP Morgan 967002273 | Leibovitz Studio | $707,396 |
| **August 28, 2009** | Art Capital Group – JP Morgan 967002273 | Leibovitz Studio | $500,000 |
| **September 2009** | Jonathan Podell | Leibovitz Studio | $50,000 |
| | | **SUB-TOTAL:** | $1,963,803 |
| | | **GRAND TOTAL (INCLUDES LEIBOVITZ STUDIO TRANSFERS):** | $3,256,407 |

Of the above payments in the amount of $1,963,803 and the Leibovitz Studio Transfers in the

amount of $1,292,604, which aggregate $3,256,407, $2,500,000 were paid out of funds of Stacy

Lloyd (a client of the Debtors), and $200,000 were paid out of funds of Fred Hochburg (also a

client of the Debtors) that had been deposited into the Bristol IOLA Account.  The balance of

---

[41]    To the extent additional information is brought to light in discovery with respect to the specific Defendants who benefited from the within expense transfers, the Trustee reserves his right to amend the instant pleading to reflect same.

Defendants' expenses paid as aforesaid, in the amount of $594,796.00, were paid from funds of the Debtors that had been deposited into the Bristol IOLA Account (the **"Aggregate Expense Transfers"**).

~~27~~31.    To date, in breach of the Agreement, ~~Defendants~~ Leibovitz and/or her Companies have failed to pay back to the Debtors or to the Trustee any portion of the Aggregate Expense Transfers in the aggregate amount of $594,796.00.

*                    *                    *

## COUNT ~~FOUR~~THREE
### (Breach of Contract Against Leibovitz Studio)

~~44~~42.    The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

43.    ~~45.    In or about April, 2009, the Debtors and the Defendants entered into the Agreement. 46.~~ The Debtors performed their obligations under the Expense Transfer Agreement by among other things making payment of the ~~Aggregate Expense~~ Leibovitz Studio Transfers and various expense transfers on behalf of Leibovitz Studio in the aggregate amount of $~~594,796~~2,771,637.00.[52]

~~47.    Defendants~~44. Leibovitz Studio, however, ~~have~~has breached ~~their~~its obligations under the Expense Transfer Agreement by failing to repay to the Debtors or to the Trustee

---

[52]    As set forth in Paragraph 30 above, $2,500,000 of the $3,256,407 grand total of expense transfers, which includes, among other transfers, the Leibovitz Studio Transfers and transfers made on behalf of Leibovitz Studio, were paid out of funds of Stacy Lloyd (a client of the Debtors) and $200,000 were paid out of funds of Fred Hochburg (also a client of the Debtors) that had been deposited into the Bristol IOLA Account. The Leibovitz Studio Transfers and transfers made on behalf of Leibovitz Studio in the amount of $2,771,637.00 make up approximately 85% of the grand total of $3,256,407 in expense transfers (**"Leibovitz Studio's Percentage"**).

$506,250.79, which amount represents Leibovitz Studio's Percentage of the $594,796.00 in Aggregate Expense Transfers.

45.    Accordingly, Leibovitz Studio owes the Trustee the amount of $506,250.79, plus interest and costs.

### COUNT FOUR
### (Breach of Contract Against Leibovitz)

46.amount    The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

47.    The Debtors performed their obligations under the Expense Transfer Agreement by, among other things, making payment of expense transfers on behalf of Leibovitz in the amount of $285,462.[63]

48.    Leibovitz, however, has breached her obligations under the Expense Transfer Agreement by failing to repay to the Debtors or to the Trustee $53,531.64, Leibovitz's Percentage of the Aggregate Expense Transfers in the amount of $594,796.00.

4849.  Accordingly, Leibovitz Studio owes the Trustee the amount of $53,531.64, plus interest and costs.

### COUNT FIVE
### (Breach of Contract Against All Defendants)

50.    The Trustee realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

---

[63]    As set forth in Paragraph 30 and Footnote 5 above, $2,500,000 of the $3,256,407 grand total of expense transfers, which includes, among other transfers, the transfers made on behalf of Leibovitz, were paid out of funds of Stacy Lloyd (a client of the Debtors) and $200,000 were paid out of funds of Fred Hochburg (also a client of the Debtors) that had been deposited into the Bristol IOLA Account. The expense transfers on behalf of Leibovitz in the amount of $285,462 make up approximately 9% of the total $3,256,407 expense transfers (**"Leibovitz's Percentage"**).

51.    The Debtors performed their obligations under the Expense Transfer Agreement by, among other things, making payment of expense transfers on behalf of Leibovitz and/or her Companies in the amount of $199,308.[74]

52.    Defendants, however, have breached their obligations under the Expense Transfer Agreement by failing to repay to the Debtors or to the Trustee $35,013.57, the Defendants' Percentage of the Aggregate Expense Transfers in the amount of $594,796.00.

53.    Accordingly, Defendants owe the Trustee the amount of $~~594,796.00~~35,013.57, plus interest and costs.

---

[74]    As set forth in Paragraph 30 and Footnotes 5 and 6 above, $2,500,000 of the $3,256,407 grand total of expense transfers were paid out of funds of Stacy Lloyd (a client of the Debtors) and $200,000 were paid out of funds of Fred Hochburg (also a client of the Debtors) that had been deposited into the Bristol IOLA Account. The expense transfers on behalf of Leibovitz and/or her Companies in the amount of $199,308 make up approximately 6% of the total $3,256,407 expense transfers (**"Defendants' Percentage"**).