**TARTER KRINSKY & DROGIN LLP**
*Substitute Special Litigation Counsel*
*to the Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Robert A. Wolf, Esq.
Christopher Tumulty, Esq.
rwolf@tarterkrinsky.com
ctumulty@tarterkrinsky.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**KENNETH IRA STARR, *et al.*,**<br><br>Debtors.[1] | **Case No. 11-10219 (MEW)**<br><br>**Chapter 7**<br><br>**Jointly Administered**<br>**Substantively Consolidated** |
| **ROBERT L. GELTZER, AS CHAPTER 7 TRUSTEE OF KENNETH IRA STARR, STARR & COMPANY, LLC, AND STARR INVESTMENT ADVISORS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**ANNALOU LEIBOVITZ a/k/a ANNIE LEIBOVITZ, LEIBOVITZ STUDIO, INC., 305-307 WEST 11TH STREET LLC, and 311 WEST 11TH STREET LLC,**<br><br>Defendants. | **Adv. Pro. No. 14-02446 (MEW)** |

**PLAINTIFF-TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS 3, 4, AND 5 OF THE FIRST AMENDED COMPLAINT**

[1] The Debtors in these cases and the case number assigned to each of the Debtors are as follows: Kenneth Ira Starr (11-10219 (ALG)); Starr & Company, LLC (11-10637 (ALG)); and Starr Investment Advisors, LLC (11-10639 (ALG)).

# TABLE OF CONTENTS

Preliminary Statement....................1

Argument....................2

I. The Trustee Has Sufficiently Pleaded a Claim for Implied Contract in Counts 3, 4, and 5 of the First Amended Complaint....................3

II. The Trustee's Damages Calculations....................8

Conclusion....................11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................2, 3

*Boykin v. KeyCorp.*,
521 F.3d 202 (2d Cir. 2008)....................3

*Ellis v. Provident Life & Accident Ins. Co.*,
3 F. Supp. 2d 399 (S.D.N.Y. 1998)....................3

*Geftman v. C.I.R.*,
154 F.3d 61 (3d Cir. 1998)....................7

*Gowan v. Patriot Group, LLC (In re Dreier LLP)*,
452 B.R. 391 (Bankr. S.D.N.Y. 2011)....................3

*In re Fairway Group Holding Corp. Securities Litigation*,
No. 14 Civ. 0950, 2015 WL 249508 (S.D.N.Y. Jan. 20, 2015)....................2

*In re Saba Enterprises, Inc.*,
421 B.R. 626 (Bankr. S.D.N.Y. 2009)....................3

*Leepson v. Allan Riley Co., Inc.*,
No. 04 Civ. 3720, 2006 WL 2135806 (S.D.N.Y. Jul. 31, 2006)....................4, 7

*Leibowitz v. Cornell University*,
No. 03 Civ. 9976, 2005 WL 267560 (S.D.N.Y. Feb. 3, 2005), *aff'd in part and vacated in part*, 445 F.3d 586 (2d Cir. 2006)....................7

*Maas v. Cornell Univ.*,
94 N.Y.2d 87, 699 N.Y.S.2d 716 (1999)....................3, 4, 7

*Missigman v. USI Ne., Inc.*,
131 F. Supp. 2d 495 (S.D.N.Y. 2001)....................3

*Nadel v. Play-By-Play Toys & Novelties, Inc.*,
208 F.3d 368 (2d Cir. 2000)....................4, 7

*Nanjing Textiles IMP/EXP Corp., Ltd. V. NCC Sportswear Corp.*,
No. 06 Civ. 52, 2006 WL 2337186 (S.D.N.Y. Aug. 11, 2006)....................4, 7

*Sang Lan v. Time Warner, Inc.*,
No. 11 Civ. 2870, 2013 WL 1703584 (S.D.N.Y. Apr. 19, 2013)..............................................6

*Spencer Trask Software and Information Servs. LLC v. RPost Intern. Ltd.*,
383 F. Supp. 2d 428 (S.D.N.Y. 2003)...........................................................................................4

*Transcience Corp. v. Big Time Toys, LLC*,
50 F. Supp. 3d 411 (S.D.N.Y. 2014).............................................................................................6

## PRELIMINARY STATEMENT

Plaintiff Robert L. Geltzer, as Chapter 7 trustee ("**Plaintiff**" or "**Trustee**") of Kenneth Ira Starr ("**Starr**"), Starr and Company, LLC ("**S&C**") and Starr Investment Advisors, LLC ("**SIA**," together with Starr and S&C, the "**Debtors**"), by his undersigned special counsel, hereby submits this memorandum of law in opposition to the motion to dismiss (the "**Motion**") Counts 3, 4, and 5 of the Trustee's First Amended Complaint ("**FAC**") in this adversary proceeding filed by Defendants Annalou Leibovitz a/k/a Annie Leibovitz, Leibovitz Studio, Inc., 305-307 West 11th Street LLC, and 311 West 11th Street LLC (collectively, "**Defendants**").

Defendants' Motion seeks to dismiss Counts 3 through 5 of the FAC based on their arguments that the Trustee has not alleged mutual assent for an implied contract and that the damages amounts do not add up. Neither of these contentions warrant dismissal of the FAC. Contrary to Defendants' assertion, the FAC contains a detailed description of the Defendants' course of dealing with the Debtors concerning a wide range of financial services. The FAC alleges that in connection with these services, the parties also had an arrangement whereby the Debtors would advance payment of Defendants' expenses either to third parties or directly to Defendants. The FAC clearly alleges that the parties had an expectation and intention that these amounts would be reimbursed. The fact is that the parties were sophisticated people in a purely business relationship dealing with financial services and money management – there is simply no reason for Debtors to have paid these expenses without an understanding from Defendants that they would reimburse the Debtor. As the Court noted during oral argument on Defendants' first motion to dismiss:

> …at one point you even alleged there's no sufficient evidence of an agreement, but if there wasn't an agreement, why on earth were the Starr entities paying your client's expenses?

(Hearing Transcript, Dec. 2, 2015, at 10:6-8, Exhibit A to the Declaration of Robert A. Wolf, submitted herewith).

A course of dealing, such as existed here, is a well-recognized basis from which to infer mutual assent in an implied-in-fact contract claim.

As for the damages calculation, Defendants' argument regarding a mathematical error is not a sufficient basis to dismiss the FAC. While there is a discrepancy of $38,389 between the damages alleged in the complaint of $594,796 and the correct calculation of $556,407, this difference is fully explained below and in the accompanying declaration of the Trustee's accountant Vinay Agarwal ("**Agarwal Declaration**" or "**Agarwal Decl.**"). Whether the true damages sum is $594,796 or $556,407 is not probative on this Motion and, in any event, we submit that the Agarwal Declaration sets the record straight on this point.

For the reasons set forth below, the Trustee's claims for implied contract are properly stated and the Defendants' Motion must be denied.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . ." *In re Fairway Group Holding Corp. Securities Litigation*, No. 14 Civ. 0950, 2015 WL 249508, at *3 (S.D.N.Y. Jan. 20, 2015) (emphasis in original omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)). Thus, "[w]hen there are well-pleaded factual allegations, a court should

assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The "Court's role in deciding a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Id.* at *4. This "liberal pleading" standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 569-70.

Courts should be especially cognizant of this "flexible plausibility standard," *Boykin v. KeyCorp.*, 521 F.3d 202 (2d Cir. 2008), in the context of adversary proceedings commenced by a Chapter 7 trustee because the trustee is asserting claims on behalf of the bankruptcy estate, yet is nevertheless an "outsider to the transaction" at issue and must plead from "second-hand knowledge." *See, e.g., In re Saba Enterprises, Inc.*, 421 B.R. 626, 640 (Bankr. S.D.N.Y. 2009) (noting that Courts have taken a "more liberal view" when examining allegations of actual fraud by a bankruptcy trustee under Fed. R. Civ. P. 9(b) because the trustee was not a party to the transaction); *Gowan v. Patriot Group, LLC (In re Dreier LLP)*, 452 B.R. 391, 408 (Bankr. S.D.N.Y. 2011) (where Plaintiff is a bankruptcy trustee, "courts take a more liberal view when examining allegations" (internal quotation marks omitted)).

## I. The Trustee Has Sufficiently Pleaded a Claim for Implied Contract in Counts 3, 4, and 5 of the First Amended Complaint

Under New York Law, a "contract may be implied where inferences may be drawn from the facts and circumstances of the case and the intention of the parties as indicated by their conduct." *Missigman v. USI Ne., Inc.*, 131 F. Supp. 2d 495, 512 (S.D.N.Y. 2001) (quoting *Ellis v. Provident Life & Accident Ins. Co.*, 3 F. Supp. 2d 399, 409 (S.D.N.Y. 1998)). An implied contract "requires such elements as consideration, mutual assent, legal capacity and legal subject matter." *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 94, 699 N.Y.S.2d 716 (1999).

Defendants' Motion does not dispute that the elements of consideration, legal capacity and legal subject matter were present and are properly alleged. Defendants base their Motion solely on the contention that facts sufficient to establish mutual assent have not been stated. Mutual assent to an implied contract, however, may be inferred from "the specific conduct of the parties, industry custom, and course of dealing. *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 376, n. 5 (2d Cir. 2000) (*citing Maas*, 94 N.Y.2d at 94). That is, "a promise may be implied when a court may justifiably infer that the promise would have been explicitly made, had attention been drawn to it." *Maas*, 94 N.Y.2d at 94. "[W]hether certain conduct gives rise to an implied contract is a question of fact, to be determined under the circumstances of the case." *Spencer Trask Software and Information Servs. LLC v. RPost Intern. Ltd.*, 383 F. Supp. 2d 428, 448 (S.D.N.Y. 2003) (denying motion to dismiss as "inappropriate … at this point" because "the Court cannot conclusively determine that the parties did not make a binding [contract]" based on their conduct).

Where, as here, there is a course of dealing and conduct that is consistent with an ongoing or past business relationship, the element of mutual assent was present and is properly alleged. *See, e.g., Nanjing Textiles IMP/EXP Corp., Ltd. V. NCC Sportswear Corp.,* No. 06 Civ. 52, 2006 WL 2337186, *11 (S.D.N.Y. Aug. 11, 2006) (finding that an implied-in-fact contract claim was properly stated based on the past practices of the parties); *Leepson v. Allan Riley Co., Inc.*, No. 04 Civ. 3720, 2006 WL 2135806, *5 (S.D.N.Y. Jul. 31, 2006) (denying motion to dismiss where plaintiff "alleges facts sufficient to support an inference of mutual assent" for an implied-in-fact contract for legal services based on the parties' ongoing "course of performance" of such services and that defendant "accepted the benefits of [plaintiff's] services").

Here, the FAC contains detailed factual allegations regarding a wide-array of financial-related services performed by Debtors on behalf of all Defendants, including under the Expense Transfer Agreement,[2] the acceptance of those transfers by the respective Defendants to pay substantial expenses incurred by Defendants, as specifically delineated in the charts set forth in paragraphs 29 and 30 of the FAC, and an expectation that the Debtors would be repaid by the respective Defendants for those transfers.

As set forth in the accompanying Agarwal Declaration, the Trustee's Court-appointed Accountant conducted a due diligence review of Debtors' books and records and found that the expenditures made by Debtors on behalf of the respective Defendants aggregated $556,407 in Debtors' funds, for which Defendants have failed to reimburse Debtors in contravention of the Expense Transfer Agreement. (FAC ¶¶ 29-31). These facts, read together with the totality of the allegations in the FAC, clearly show a business relationship and a course of dealing between Debtors and Defendants that is sufficient to establish the existence of the Expense Transfer Agreement as an implied-in-fact contract.

Although Defendants' Motion is not directed towards Plaintiff's allegations of the existence of the Professional Services Agreement, the formation of the Expense Transfer Agreement cannot be viewed independently from the Professional Services Agreement. As set forth in the FAC, under the Professional Services Agreement, Debtors provided substantial financial-related services to Defendants in consideration of $20,000 per month until 2007 and then $25,000 per month thereafter. (FAC ¶18). From time to time, upon further mutual agreement, the monthly fee was increased to $50,000 per month as a result of additional services rendered. (FAC ¶18, fn. 3).

[2] Capitalized terms herein shall have the same definition as in the FAC where not otherwise defined.

Under the related Expense Transfer Agreement, the parties agreed that Defendants would reimburse Debtors for any expenses advanced by Debtors on behalf of Defendants. (FAC ¶ 28). Based on these allegations in the FAC, the Expense Transfer Agreement was essentially an extension of the Professional Services Agreement, and the course of dealing surrounding the formation of these two agreements and performance thereunder must be viewed together, for, in reality, no services would have been provided if they had to be provided free of expense-reimbursement. Indeed, the only reasonable explanation for why Debtors paid Defendants' expenses is that it was based on a contractual business relationship whereby Debtors expected to be reimbursed for the payments.

These payments by Debtors were not gifts or some charitable acts. Defendants had an ongoing contractual business relationship with Debtors and certainly should have understood that Debtors' payment of Defendants' expenses was not altruistic. The Court's question at the December 2, 2015 hearing of "why on earth were the Starr entities paying your client's expenses?" correctly recognizes that there was no reason for Debtors to make these advances other than with the expectation of reimbursement. (Hearing Transcript, Dec. 2, 2015, at 10:6-8, Ex. A to Wolf Decl.).

Thus, Defendants do not dispute that Debtors paid expenses on behalf of Defendants and were not reimbursed. Defendants' hollow contention that "courts routinely dismiss" implied contract claims is unavailing because none of their cited cases involves a course of dealing and level of specificity as is alleged here. *See*, *e.g.*, *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 411, 455-56, n.14 (S.D.N.Y. 2014) (dismissing an implied contract claim based on the fact that, *inter alia*, an express contract governed the parties' relationship); *Sang Lan v. Time Warner, Inc.*, No. 11 Civ. 2870, 2013 WL 1703584, *5 (S.D.N.Y. Apr. 19, 2013) (finding that an

allegation of a promise to pay, without any other asserted elements of an implied-in-fact contract, is not sufficient).[3] With respect to *Leibowitz v. Cornell University*, No. 03 Civ. 9976, 2005 WL 267560, (S.D.N.Y. Feb. 3, 2005), *aff'd in part and vacated in part*, 445 F.3d 586 (2d Cir. 2006),[4] the Second Circuit actually vacated dismissal of one of two implied-in-fact contract claims asserted, based on plaintiff's allegation that an "unofficial policy" was in place covering her claim to lifetime tenure. *Leibowitz*, 445 F.3d at 592-93. The Circuit upheld dismissal of the other claim which, unlike the FAC, included no factual allegations in support. *Id.* at 593.

For Defendants to argue that Plaintiff's claims concerning the Expense Transfer Agreement cannot withstand this Motion simply ignores Debtors' and Defendants' ongoing course of dealing, which surrounded and necessarily informs the creation of the Expense Transfer Agreement. *Nadel*, 208 F.3d at 376, n. 5 (*citing Maas*, 94 N.Y.2d at 94); N*anjing Textiles*, 2006 WL 2337186 at *11; *Leepson*, 2006 WL 2135806 at *5. At this early pleading stage, the FAC clearly establishes plausible claims for breach of the Expense Transfer Agreement based upon the parties' conduct and course of dealing, and the Trustee should be afforded the opportunity to conduct discovery regarding these claims.

For all of the foregoing reasons, Defendants' motion to dismiss Counts 3-5 of the FAC must be denied.

---

[3] In addition, the cased footnoted by Defendants regarding the insufficiency of alleging only monetary transfers without more are inapposite. *See, e.g.*, *Geftman v. C.I.R.*, 154 F.3d 61, 70 (3d Cir. 1998) (finding that a transfer of money from one to another without more is not sufficient to establish that the transfer was a bona fide loan for tax purposes). As set forth above, this argument ignores the parties' course of dealing at the time of the alleged formation of the Expense Transfer Agreement.

[4] Defendants misleadingly cite this case as only being "aff'd" by the Second Circuit, (Defendant's Motion, pp. 6-7) when in fact the appellate court vacated the lower court's dismissal of one of the implied-in-fact contract claims.

## II. The Trustee's Damages Calculations

Defendants' contentions regarding the Trustee's damages calculations also fall short of warranting dismissal. Defendants' argument boils down to a protest that the Trustee's calculation is allegedly confusing. This is not sufficient to dismiss a complaint. Aside from a minor miscalculation (fully explained below), Defendants' argument is a diversion from the fact that they have no explanation for why the Debtors' money was disbursed for Defendants' benefit, both directly and through payment of expenses, without any reimbursement from Defendants for those benefits.

As an initial matter, Defendants point out a mathematical error in the damages calculation of the FAC equating to a difference of $38,389. As set forth in the accompanying Agarwal Declaration, the table summaries of amounts in paragraphs 29 and 30 of the FAC are accurate, based on Mr. Agarwal's review of the bank statements of the pertinent IOLA account through which the Debtors' monies flowed. (Agarwal Decl., ¶ 3).[5] These listed items represent the total known transfers to, or on behalf of, the various Defendants specified therein, within the statute of limitation period from the IOLA account: an amount of $3,256,407. There is, however, a discrepancy in that the portion of that total amount derived from the Debtors' funds should be $556,407, not $594,796. (*Id.* at ¶¶ 3-4). As explained in the Agarwal Declaration, the reason for this discrepancy is that two transactions shown in the bank statements of the IOLA account, totaling $38,389, should have been omitted from the damages calculation because they fell outside of the six (6) year statute of limitations. (*Id.* at ¶ 3). These transactions – a disbursement of $18,000 on May 25, 2007 and a disbursement of $20,389 on September 26, 2008 – were included in the original damages calculation performed by the Trustee's Accountant, but while

[5] The only caveat, which is explained therein, is that last entry in the table at paragraph 30 should be listed November 3, 2009 rather than September 2009. (Agarwal Decl., ¶ 3 n.2).

they were removed from the summary tables in the FAC, the original resulting damages number of $594,796 was inadvertently not also reduced to account for their removal from the calculation. (*Id.* at ¶¶ 3-4).

Accordingly, the damages amount set forth in the FAC should properly reflect an "Aggregate Expense Transfers" amount of $556,407 (FAC ¶¶ 30, 31). The corresponding amounts for the following obligations under the Expense Transfer Agreement should be: Leibovitz Studio in an amount of $472,945.95 (FAC ¶¶ 44, 55); Leibovitz in an amount of $50,076.53 (FAC ¶¶ 48, 49); and Leibovitz and/or her Companies in an amount of $33,384.42 (FAC ¶¶ 52, 53). These resulting amounts are based on applying the percentage calculation described in detail in the FAC, (FAC ¶¶ 43 n.5, 47 n.6, 51 n.7), to the revised Aggregate Expenses Transfers.

While the damages calculations must be slightly revised, they still represent a significant amount of money which was transferred by the Debtors for Defendants' benefit, directly and through payment of expenses, without reimbursement from Defendants. In short, whether the total amount was $594,796 or $556,407 is immaterial for purposes of this motion to dismiss, and nevertheless, fully explained above and in the Agarwal Declaration, and can be determined at trial which should not be denied solely for a mathematical error of no substantial consequence.

Finally, there is no merit to Defendants argument that the funds accounting for the Aggregate Expense Transfers were somehow not the Debtors' funds as this contention clearly is contradicted by the Agarwal Declaration. Defendants simply claim that they do not understand the Trustee's calculation. This again is not sufficient to dismiss the complaint.

The FAC clearly alleges that the funds disbursed from the IOLA account for which recovery is sought belonged to the Debtors. (FAC ¶¶ 29-30). These assertions are further

buttressed in the Agarwal Declaration by Mr. Agarwal, who is one of the forensic accountants who has performed services on behalf of the Trustee in this case and has meticulously reviewed the pertinent books and records of the Debtors in order to calculate those portions of the expense transfers attributable to Debtors' funds. As detailed in the Agarwal Declaration, the reason that $2,700,000, out of the total $3,256,407 disbursed for Defendants' benefit, is not being sought here is because: (i) Leibovitz Studio transferred the "Master Set" of photographs to Stacy Lloyd in accordance with a Master Set Purchase and Sale Agreement, as consideration for the $2,500,000 in funds attributable to Lloyd in the IOLA account and (ii) based on information obtained from Fred Hochberg, Hochberg is being repaid by Leibovitz Studio for the $200,000 in Hochberg's funds loaned through the IOLA account under a loan agreement. (Agarwal Decl., ¶ 5). The remaining $556,407 in Aggregate Expense Transfers, representing 17% of the total referenced transfers, is not the subject of any past reimbursement from Defendants which would relieve them of their obligations to the Trustee. (*Id.*). If Defendants contend that reimbursement of these amounts is accounted for by some other arrangement to which the Trustee was not privy, that should be raised as an affirmative defense and pursued through discovery. Yet, during the extensive due diligence investigation performed by the Trustee and his Accountant, there is no record that Defendants reimbursed Debtor for any of the Aggregate Expense Transfers.

Defendants do not dispute that these funds were actually transferred and do not dispute that Defendants benefited. Their contentions regarding the source of the funds and the amount of damages are arguments, if at all, for a later day, as there can be no dispute at the pleading stage of this adversary proceeding that the Debtors' funds were used for Defendants' benefit.

## CONCLUSION

Based upon the foregoing reasons, the Trustee respectfully requests that this Court deny Defendants Motion in its entirety and order such other and further relief as it may deem just and proper.

Dated: New York, New York
April 6, 2016

Respectfully submitted,

**TARTER KRINSKY & DROGIN LLP**
*Substitute Special Litigation Counsel to the Chapter 7 Trustee*

By: *_____/s/ Robert A. Wolf_________*
Robert A. Wolf
Christopher Tumulty
1350 Broadway, 11th Floor
New York, New York 10018
Tel (212) 216-8000
rwolf@tarterkrinsky.com
ctumulty@tarterkrinsky.com